IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

ROBERT E. KIDD                          )
and CAROLYN A. KIDD,                     )
                                        )
            Plaintiffs,                  )     TC-MD 111185N
                                        )
    v.                                   )
                                        )
DEPARTMENT OF REVENUE,                   )
State of Oregon,                         )
                                        )
            Defendant.                   )     **DECISION**

Plaintiffs appeal Defendant's Notice of Deficiency Assessment (Notice), dated August 5, 2011, for the 2007 tax year. Trial was held in this matter in the Tax Courtroom on August 2, 2012. Judy R. Dethloff (Dethloff), CPA, appeared on behalf of Plaintiffs. Robert E. Kidd (Robert) and Carolyn A. Kidd (Carolyn) testified on behalf of Plaintiffs.[1] Bruce McDonald, Tax Auditor, appeared on behalf of Defendant. Plaintiffs' Exhibits A through K and Defendant's Exhibits A through E were received without objection.

Dethloff identified "three areas of disagreement" between Plaintiffs and Defendant: Plaintiff's claimed deduction of $1,600 for trust expense reimbursement; Plaintiffs' "tax home" for the 2007 tax year; and Plaintiffs' request for waiver of the 2007 amnesty penalty. (*See* Ptfs' Ex A at 1; Ptfs' Compl at 4-5.) The parties agree that Plaintiffs' "originally reported trust income in the amount of $1,600 was a non-taxable reimbursement of expenses." (Def's Ltr at 1, March 19, 2012; Ptfs' Ex A at 1.)

/ / /

---

[1] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to two individuals with the same last name, Kidd. To avoid confusion, the court will use the first name of the individual being referenced.

## I.  STATEMENT OF FACTS

Carolyn testified that she is an "operating engineer" for the International Union of Operating Engineers (IUOE) Local 701 ("the union"), the jurisdiction of which is all of Oregon and five counties in Southwest Washington.  She testified that the union hall is in Gladstone, Oregon.  Carolyn testified that she is certified to work as a "crane operator" and that she also has 12 years experience in "heavy highway"; in addition to cranes, she is certified to operate machinery including scrapers and excavators.  Carolyn estimated that there are about 4,000 members of the union and very few are women.  She testified that employers sometimes specifically request women and minority workers for jobs and that she suspects that she has received some additional opportunities because she is a woman.

Carolyn testified regarding the protocol for receiving work through the union: when one job ends, she contacts the union either by telephone or in person to be added to the "out of work list."  She testified that, when she is on the "out of work list," she will wait for a call from the union for a particular job opening.  Carolyn testified that there is only a short amount of time to respond to job openings; typically 24 hours or less.  She testified that the consequences for declining a job opening are that she would be moved to the bottom of the call list and may jeopardize her ability to collect unemployment benefits between jobs.  Carolyn testified that the same consequences result from quitting a job, with the additional consequences of damage to her reputation and a possible "red flag" as "not for rehire."

Carolyn provided a letter from the IUOE Dispatch Office detailing her work history from August 1999 through December 2009.  (Ptfs' Ex B at 1.)  From August 1999 through December 2007, Carolyn had jobs in "Chemult, OR to Sacramento Calif" (109 days); Longview, Washington (57 days); Eugene, Oregon (two jobs lasting 1,723 days and 7 days, respectively);

Salem, Oregon (39 days); Vancouver, Washington (168 days); and Portland, Oregon (two jobs lasting 348 and 330 days, respectively). (*Id.*)

Carolyn testified that, during 2007, she worked for Hoffman Structures Inc. at the "So. Waterfront" site in Portland, Oregon, from January 3, 2007, through November 28, 2007. (*See* Ptfs' Ex B at 1.) Previously she worked for Hoffman Construction at the "OHSU" site in Portland from January 20, 2006, through December 18, 2006. (*Id.*) Immediately preceding that position, she worked for Hoffman Structures, Inc. in Vancouver, Washington from August 4, 2005, through January 18, 2006. (*Id.*) Carolyn testified that she was dispatched by the union to the Vancouver job with Hoffman Structures. She testified that, at the end of the Vancouver job, she was offered a position with Hoffman Construction at the OHSU site beginning two days later on January 20, 2006. Carolyn testified that she had to seek approval from the union to take the OHSU job and that the union could have denied her request. Carolyn testified that she received the job with Hoffman Structures at the South Waterfront site in Portland through the union, but she was specifically requested by Hoffman Structures for the job. She testified that, if she had been working on another job at the time of the request, the union would not have called her. Robert testified that Hoffman Structures and Hoffman Construction are "separate legal entities," although superintendents do talk to one another.

Plaintiffs both testified that, during 2007, they lived in Albany, Oregon. Plaintiffs testified that, as of the date of trial, they had lived in Albany for 10 years, prior to which they lived in Beaverton, Oregon for six years. Plaintiffs moved to Albany because, from April 2000 through January 2005, Carolyn worked in Eugene, Oregon. (Ptfs' Ex A at 2.) Carolyn's employment in Eugene "required her to travel between Eugene & Portland and Albany was a good central location on the I-5 corridor." (*Id.*) Carolyn testified that she returns to her home in

Albany in between jobs and on days off. She testified that, when she is at home in Albany, she shops for groceries, cooks meals, washes clothing, pays bills, and rests. Carolyn testified that Plaintiffs have a home office with a desk, computer, printer, file cabinets, and a shredder. She testified that they maintain personal records in that office and did not deduct the office on their income tax returns. Carolyn testified that she did not have any employment in Albany in 2007.

Plaintiffs maintain that Carolyn's tax home in 2007, and prior years, was Albany. (Ptfs' Ex A at 2-3.) Plaintiffs consider Albany to be in the Mid-Willamette Valley area, which they consider to include Salem, Albany, and Eugene, Oregon. (*See* Ptfs' Ex B at 1.) Consistent with her understanding that Albany was her tax home, Carolyn "did not claim any employee business expenses as she commuted from Albany to Eugene daily" from 2000 through 2005. (Ptfs' Ex A at 2.) From August 2005 through January 2006, Carolyn "claimed employee business expenses as she temporarily spent the work week in Vancouver, WA and return[ed] to her home in Albany for weekends & holidays." (*Id.*) Carolyn also "claimed employee business expenses" when she worked in Portland, Oregon from January through December 2006 and from January through November 2007. (*Id.* at 3.)

Plaintiffs provided the union's "2007 dispatch log * * * specifically for jobs in the Willamette Valley area." (Ptfs' Ex D.) Carolyn testified that she was qualified for the jobs on the list, but could not take any of them because she was employed during 2007 for Hoffman Structures. She testified that she assumes the "dispatch log" for the Portland metro area for 2007 would be similar or longer.

Robert testified that he is also an operating engineer with the union. He testified that he is qualified for all of the same jobs as Carolyn, except those that require a crane operator, which is a separate certification. (*See* Ptfs' Ex D.) Robert testified that, like Carolyn, he reports to the

union either by telephone or in person when he is out of work. He testified that he typically only reports in person if he needs to update his skills list. Robert testified that, when he is not working on a job and on his days off, he typically returns to Plaintiffs' house in Albany, where he takes care of the plants and animals and works on Plaintiffs' cars for car shows.

Between 2000 and 2007, Robert had jobs in "Marion OR to Sacramento, Calif" (150 days); St. Helens, Oregon (204 days); Hillsboro, Oregon (two jobs, 15 days and 92 days, respectively); Portland, Oregon (two jobs, one day and 102 days respectively); Vancouver, Washington (two jobs, 161 days and 103 days, respectively); Lake Oswego, Oregon (27 days); Zigzag, Oregon (two days); Estacada, Oregon (10 days); Albany, Oregon (560 days); Swan Island, Oregon (358 days); Mt. Hood, Oregon (56 days), Gresham, Oregon (seven days); and Gladstone, Oregon (120 days). (Ptfs' Ex B at 2.) In 2007, Robert had four different jobs with different employers: the first in Mt. Hood, Oregon from November 17, 2006, through January 12, 2007; the second in Gresham, Oregon from March 2, 2007, through March 9, 2007; the third in Portland, Oregon from March 12, 2007, through June 22, 2007; and the fourth for the union as a "field rep" from June 25, 2007, through December 19, 2007. (*Id.*) From 2004 through 2007, Robert claimed employee business expenses for each of his jobs except the job in Albany, Oregon in 2004 and 2005. (Ptfs' Exs A at 3-4, B at 2.)

Robert testified concerning his job as a "field rep" for the union in 2007: He was hired to work on a "wage setting project" whereby the union reported statewide prevailing wage statistics to the Oregon Bureau of Labor and Industry. Robert testified that he traveled statewide around Oregon gathering information and reporting it back to the union. Robert testified that, initially, it was his understanding that he would be working out of his home office in Albany; he "didn't even have a chair" at the union hall in Gladstone, Oregon. Robert testified that, during

the latter part of 2007, he was provided an office at the union hall in Gladstone. From January 7, 2008, through at least March 3, 2011, Robert has worked as a "field supervisor" for the union in Gladstone. (Ptfs' Ex B at 2.) Robert testified, as a field supervisor, he is responsible for various regions statewide and is required to travel around the state.

Plaintiffs claimed $30,372 in unreimbursed employee business expenses, including vehicle and travel expenses for the 2007 tax year. (Def's Exs A at 4-7, B at 1.) Defendant adjusted Plaintiffs' claimed expenses, disallowing $27,114; Defendant allowed expenses for union dues and some work clothes. (Def's Ex B at 1.)

## II. ANALYSIS

The issue before the court is whether Plaintiffs may deduct unreimbursed employee business expenses for vehicle and travel expenses during the 2007 tax year. This court has previously held that the Oregon Legislative Assembly "intended to make Oregon personal income tax law identical to the [IRC] for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law. ORS 316.007." *Ellison v. Dept. of Rev.,* TC-MD No 041142D, WL 2414746 at *6 (Sept 23, 2005) (footnote omitted). "On this question, Oregon law makes no adjustments to the [IRC] and therefore, federal law governs the analysis." *Porter v. Dept. of Rev.* (*Porter*), __ OTR __ (Oct 20, 2009) (slip op at 2); ORS 316.007,[2] ORS 316.012(1). "Further, the view of the Commissioner of Internal Revenue as to the legal analysis is always dispositive." *Porter*, __ OTR at __ (slip op at 2-3); *see also* ORS 314.011(3).

/ / /

/ / /

_____

[2] All references to the Oregon Revised Statutes (ORS) are to 2005.

IRC section 162(a)[3] allows a deduction for travel expenses incurred in connection with a trade or business, stating in pertinent part:

> "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * *

> "(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business;[]

> "* * * For purposes of paragraph (2), the taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year."

The business expense deduction under IRC section 162(a)(2) includes deductions for mileage, meals, lodging and other travel expenses incurred while away from home in the pursuit of a trade or business.  IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise expressly provided for in the IRC.  "The purpose of IRC § 162(a)(2) is to ameliorate the effects of business which requires taxpayers to duplicate personal living expenses." *Harding v. Dept. of Rev.* (*Harding*), 13 OTR 454, 458 (1996).  "Consequently, courts must determine whether the claimed expense is actually required by the business rather than by the taxpayer's personal choice."  (*Id.*)

To deduct travel expenses under IRC section 162(a)(2), taxpayers must show that the expenses "(1) were incurred in connection with a trade or business; (2) were incurred while away from home; and (3) were reasonable and necessary." *Morey v. Dept. of Rev.* (*Morey*), 18 OTR 76, 80-81 (2004) (citing *Finn v. Dept. of Rev.*, 10 OTR 393, 395 (1987)).  At issue here is whether Plaintiffs' claimed expenses were incurred while "away from home."

/ / /

---

[3] All references to the Internal Revenue Code (IRC) are to the 1986 code with updates applicable to 2007.

"In general, a taxpayer's home for the purposes of section 162(a)(2) - *i.e.,* the taxpayer's 'tax home' - is the taxpayer's principal place of business or employment." *Morey*, 18 OTR at 81 (citing *Harding*, 13 OTR at 459). "[A] person's principal place of business need not be limited to a specific location or job site. A principal place of business may include an entire metropolitan area. Rather than looking at particular jobs, all of the job prospects in the area must be considered." *Hintz v. Dept. of Rev.* (*Hintz*), 13 OTR 462, 467 (1996) (citing *Ellwein v. United States* (*Ellwein*), 778 F2d 506, 510 (8th Cir 1985)). The court in *Hintz* stated:

> "There undoubtedly will be situations when a construction worker will lack a principal place of business because the job sites to which he is sent are scattered over a large area. However, if the job sites are all located within the same general area, that area will constitute the taxpayer's principal place of business."

13 OTR at 467. "[T]he taxpayer's personal residence is the individual's tax home if the principal place of business is 'temporary' as opposed to 'indefinite' or 'indeterminate.' That exception is in turn subject to an exception found in the flush language of section 162(a), which provides that any employment period in excess of one year is *per se* indefinite." *Morey*, 18 OTR at 81 (citation omitted).

A place of business is temporary if the employment is such that termination within a short period could be foreseen. *Mitchell v. Comm'r*, 74 TC 578, 581 (1980) (citation omitted); *see also Michaels v. Comm'r*, 53 TC 269 (1969). Whether employment is temporary or indefinite is a question of fact. *Peurifoy v. Comm'r*, 358 US 59, 60-61, 79 S Ct 104, 3 L Ed 2d 30, *reh'g den*, 358 US 913 (1958). "If employment at a work location is realistically expected to last (and does in fact last) for 1 year or less, the employment is *temporary* in the absence of facts and circumstances indicating otherwise." Rev Rul 99-7 (emphasis in original); *see also Daiz v. Comm'r*, 84 TCM (CCH) 148 (2002).

/ / /

Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). As the party seeking affirmative relief, Plaintiffs have the burden of proof by a preponderance of the evidence. ORS 305.427. This court has previously ruled that a "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Finally, in an income tax appeal, this court has the statutory authority to determine the correct amount of the deficiency (*e.g.*, tax), "even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue[.]" ORS 305.575.

Plaintiffs' maintain that they had no "principal place of business or employment" during the 2007 tax year and that their "tax home" was their personal residence in Albany, Oregon. Defendant argues that Plaintiffs were both indefinitely employed in the Portland metropolitan area during the 2007 tax year. In the alternative, Defendant argues that, if Plaintiffs' 2007 tax year employment in the Portland metropolitan area was "temporary," then Plaintiffs' lack a "tax home" and were, therefore, "itinerant" under Revenue Ruling 73-529.

A.     *Whether Plaintiffs' employment in 2007 was "temporary" or "indefinite"*

In *Morey*, this court discussed three possible standards to determine whether the taxpayer was away from home for temporary employment; given the taxpayer's failure to meet the burden of proof under any of the standards, the court declined to "address which legal standard is controlling." 18 OTR at 82. The Ninth Circuit follows the "reasonable probability" standard under which "[a]n employee might be said to change his tax home if there is a reasonable

probability known to him that he may be employed for a long period of time at his new station. What constitutes 'a long period of time' varies with circumstances surrounding each case." *Morey*, 18 OTR at 82 (citing *Harvey v. Comm'r*, 283 F2d 491, 495 (9th Cir 1960)).

The taxpayer in *Morey*, a union pipefitter, "could have been employed over a three-state area and [he] did not know how long each job would last or where the next job might be located." 18 OTR at 83. The court found that supported a finding that the taxpayer "did not know exactly how long each job would last," but determined that evidence "was not dispositive." *Id.* "Although they are not required to prove a negative, taxpayers must offer some evidence, such as the type of job and employer, the expectations of that employer, or expectations of the customer, from which the court may determine if a reasonable probability was known to [the taxpayer] that he would be employed only for a short period of time at the new location." *Id.* The court observed that "most if not all construction jobs" are characterized by "the inherent risk that [the employee] might be laid off at anytime and the impractical nature of having to move from job site to job site[.]" *Id.* The court found that uncertainty insufficient:

> "If taxpayers could come to the court under the standard that they propose with nothing more than testimonial evidence indicating that 'nothing is certain' or 'you never know what your next job is going to be,' then arguably a new exception would be carved out for construction workers because of the inherently uncertain nature of their work generally. As noted, such an exception has been routinely rejected by the courts."

*Id.* at 83-84 (citations omitted). Relying in part on evidence that, during the tax year at issue, there was a considerable demand for "union workers" with the taxpayer's skills and experience in Eugene, the court in *Morey* found that the taxpayer could reasonably expect long term employment with one contractor or with a number of contractors in Eugene. *Id.* at 84.

/ / /

/ / /

In *Wilson v. Comm'r*, (*Wilson*), 82 TCM (CCH) 899, WL 1415561 at *4 (2001), the Tax Court stated:

> "Construction projects are typically, if not always, of limited duration. * * * However, this does not end the inquiry. This Court has recognized that when the taxpayer has a series of jobs with one employer, the actual duration of the employment relationship between the taxpayer and employer should be considered when determining whether the employment was indefinite. * * * This is true notwithstanding that the employment relationship consists of a series of shorter assignments. [] Where the employee is highly regarded by the employer, as appears to be the case here, the relationship between the two parties is a continuing one, subject only to the availability of projects requiring the employee's skills. * * *."

(Citations omitted).

In 2007, Carolyn worked for Hoffman Structures, Inc. in Portland, Oregon. In 2005 and 2006, Carolyn worked exclusively in the Portland metropolitan area: she worked for Hoffman Structures, Inc. in Vancouver, Washington in 2005 and for Hoffman Construction in Portland, Oregon in 2006. None of Carolyn's jobs in 2005, 2006, or 2007 lasted for more than one year; thus, they were not "*per se* indefinite" under IRC section 162(a). However, the testimony and evidence supports a finding that, as of the 2007 tax year, Carolyn knew of a "reasonable probability" of continued employment in the Portland metropolitan area. She testified that, in 2005, she was dispatched by the union to the Vancouver job site. At the end of the Vancouver job in 2006, she was offered a position at a site in Portland beginning two days later. Carolyn was specially requested by Hoffman Structures, Inc. for the 2007 job in Portland that began about two weeks after the conclusion of the previous job in Portland. Carolyn testified that the union would not have called her for the 2007 job in Portland if she had been employed at the time of the request, but there is no evidence to suggest that that possibility was likely. To the contrary, the evidence supports a finding that Carolyn had developed a good reputation with Hoffman Structures, Inc. during her work in Vancouver 2005; as a result, she was invited to

work for Hoffman Construction in Portland in 2006 and for Hoffman Structures, Inc. in 2007.
Thus, Carolyn was indefinitely employed in the Portland metropolitan area in 2007.

In 2007, Robert worked for four different employers at four different locations in Oregon: Mt. Hood, Gresham, Portland, and Gladstone. None of those jobs lasted for more than one year; thus, they were not "*per se* indefinite" under IRC section 162(a). Furthermore, no evidence suggests that there was a "reasonable probability" that any of those jobs would last for more than one year, with the possible exception of Robert's job as a "field rep" for the union beginning in June 25, 2007. (Ptfs' Ex B at 2.) Defendant appears to consider Robert's employment with the union beginning in 2007 to be indefinite based on the fact that, beginning in January 2008, Robert worked as a "field supervisor" for the union and continued to be so employed as of the date of trial. (*Id.*) The question, then, is when Robert knew of a "reasonable probability" that he would be employed for "a long period of time" in the Portland metropolitan area (Gladstone).[4]

Robert testified that, when he began as a "field rep" in 2007, he did not have an office in the union and it was his understanding that he would be working out of his home office in Albany. Robert was provided with an office at the union hall in Gladstone at some point during

---

[4] Revenue Ruling 99-7, which addresses when "daily transportation expenses incurred by a taxpayer in going between the taxpayer's residence and a work location are deductible[,]" supports the conclusion that the pertinent question is *when* Robert reasonably knew that he would be employed in the Portland metropolitan area for a long time. In providing guidance on when employment that lasts less than one year is "temporary" rather than "indefinite," Revenue Ruling 99-7 states:

> "If employment at a work location is realistically expected to last for more than 1 year or there is no realistic expectation that the employment will last for 1 year or less, the employment is *not temporary,* regardless of whether it actually exceeds 1 year. If employment at a work location initially is realistically expected to last for 1 year or less, but at some later date the employment is realistically expected to exceed 1 year, that employment will be treated as temporary (in the absence of facts and circumstances indicating otherwise) until the date that the taxpayer's realistic expectation changes, and will be treated as *not temporary* after that date."

(Emphasis in original.) Revenue Ruling 99-7 allows a taxpayer to "deduct daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location *outside* the metropolitan area where the taxpayer lives and normally works." (Emphasis in original.) Similarly, several circuits have determined that the temporary worksite must be located distant from the taxpayer's residence in order for commuting expenses to be deductible. *See, e.g., Ellwein*, 778 F2d at 511; *Dahood v. United States*, 747 F2d 46, 48 (1st Cir 1984).

the latter part of 2007. His position as "field supervisor" did not begin until January 7, 2008, and there is no evidence suggesting that he knew prior to January 2008 of a "reasonable probability" that he would be employed in the Portland metropolitan area for "a long period of time."[5] Thus, the court finds that Robert's employment in the Portland metropolitan area in 2007 was temporary rather than indefinite.

B.    *Whether Robert had a "tax home" or was itinerant in 2007*

Because Robert's employment in the Portland metropolitan area in 2007 was temporary, the court must next determine whether his personal residence in Albany was his "tax home" or, in the alternative, he was itinerant.

> "A taxpayer may have no tax home * * * if he continuously travels and thus does not duplicate substantial, continuous living expenses for a permanent home maintained for some business reason. Clearly, if a taxpayer has no 'home' for tax purposes, then he cannot deduct under § 162(a)(2) for expenses incurred 'away from home.' This is for good reason. * * * The burden exists 'only when the taxpayer has a 'home,' the maintenance of which involves substantial continuing expenses which will be duplicated by the expenditures which the taxpayer must make when required to travel elsewhere for business purposes.' * * * Thus, a taxpayer only has a tax home-and can claim a deduction for being away from that home-when it appears that he or she incurs substantial, continuous living expenses at a permanent place of residence. * * *."

*Henderson v. Comm'r* (*Henderson*), 143 F3d 497, 499 (9th Cir), *cert den*, 119 S Ct 181 (1998) (citations omitted); *see also Johnson v. Comm'r* (*Johnson*), 115 TC 210, 221 (2000) ("We consider a person who has neither, a permanent residence nor a principal place of employment to be an itinerant without a tax home").

The Ninth Circuit in *Henderson* relied on Revenue Ruling 73-539, which

> "outlines three factors to consider in determining whether a taxpayer has a tax home or is an itinerant. Essentially, they are (i) the business connection to the

---

[5] In *Austin v. Dept. of Rev.*, __ OTR __ (Oct 20, 2009) (slip op at 8 n 9), this court stated that it "does not find it appropriate to consider subsequent years in determining whether taxpayer 'normally' worked in a metropolitan area during the tax years at issue."

locale of the claimed home; (ii) the duplicative nature of the taxpayer's living expenses while traveling and at the claimed home; and (iii) personal attachments to the claimed home. While subjective intent can be considered in determining whether he has a tax home, objective financial criteria are usually more significant."

*Id.* at 500 (citation omitted). Based on those factors, the court concluded that taxpayer, "a stage hand for Walt Disney's World of Ice, a traveling show[,]" was itinerant during the tax year at issue and could not deduct traveling expenses. *Id.* at 498, 501. The taxpayer claimed that his tax home was his parents' home in Boise, Idaho, to which he returned in between each of his three tours during the tax year at issue. *Id.* at 498. The court found that the taxpayer "had virtually no business reason for his tax home to be in any location" and his "choice to return to Boise was not dictated by business reasons." *Id.* at 500. Furthermore, the court found that the taxpayer "did not have substantial, continuing living expenses in Boise that were duplicated by his expenses on the road" because "he paid no rent and had no ownership interest in his parents' home." *Id.*

By contrast, the Tax Court in *Johnson* held that taxpayer, a sea captain who traveled worldwide for long periods of time, maintained a "tax home" at his personal residence in Freeland, Washington, where his family lived. 115 TC at 211, 222. The court explained:

"Petitioner also had a legitimate reason for maintaining his personal residence in Freeland while traveling throughout the world with and for his employer. First, petitioner's family did not travel with him while he worked; thus, petitioner was required to maintain a family residence somewhere. We refuse to second guess petitioner's decision to maintain his family residence in Freeland, instead of moving his family to the location of his Florida employer or to one of the many cities to which he traveled. * * * To have a tax home for purposes of section 162(a), a taxpayer need not maintain a residence in a city in which he or she actually works. * * *."

*Id.* at 222 (citations omitted). In *Semock v. Comm'r*, 68 TCM (CCH) 378, *2, *4 (1994), the Tax Court held that taxpayer, an engineer and consultant, maintained a tax home in Cape Canaveral, Florida even though, during the tax years at issue, he did not work in Cape Canaveral but rather

held "temporary contract jobs" that typically lasted three to six months in Virginia, Florida, North Carolina, Vermont, and Alabama. The taxpayer initially moved to Cape Canaveral for work and, during the tax years at issue, "maintained an apartment for which he paid rent of $250, and later $275, per month, as well as utilities." *Id.* The Court found persuasive the facts that "no evidence suggest[ed] that [the taxpayer's] prospects for future employment in Cape Canaveral were hopeless" and that, during periods of unemployment during the tax years at issue, the taxpayer "returned to his home and diligently sought employment in the Cape Canaveral area." *Id.* at *4.

Based on the three factors identified in Revenue Ruling 73-529 and applied by the Ninth Circuit in *Henderson*, the court finds that, during the 2007 tax year, Robert maintained a "tax home" at his personal residence in Albany, Oregon. It is clear that Robert incurred "duplicative expenses while traveling and at the claimed home" and that Robert had sufficient "personal attachments" to Plaintiffs' home in Albany, Oregon. The only question is whether Robert had a "business connection" to Albany or the larger metropolitan area. Plaintiffs testified that the jurisdiction of the union is all of Oregon and part of Southwest Washington. Furthermore, Plaintiffs presented evidence of numerous job openings in the Willamette Valley in 2007. As in *Semock*, there is no evidence to suggest that Robert's job prospects in Albany or the larger metropolitan area were "hopeless." Robert "was required to maintain a family residence somewhere." *Johnson*, 115 TC at 221-222. At least as of the 2007 tax year, it would not have been reasonable for Robert to move to Gladstone or the Portland metropolitan area based on his position as "field rep" for the union.

/ / /

/ / /

C.    *Amnesty penalty*

Plaintiffs request that the court waive the amnesty penalty imposed by Defendant. Plaintiffs argue that "[t]here was no knowledge on the part of the taxpayers during the amnesty period that [their] position [regarding tax home and claimed business expenses] would be challenged so they had no opportunity to file during the amnesty period.  This penalty was intended to be an additional charge to the taxpayers who should have known that they had incorrectly filed an income tax return." (Ptfs' Ex A at 1.)  Defendant responds that Plaintiffs' request for waiver of the amnesty penalty must be made to Defendant; the court's review is limited to abuse of discretion.  As noted by Defendant, Defendant has discretionary authority to waive the penalty imposed on Plaintiffs.  *See* OAR 150-305.100-(C)(7)(d); OAR 150-305.145(4).  It is unclear to the court whether Plaintiffs have made a request for waiver to Defendant or that Defendant denied Plaintiffs' request.[6]  There is no action taken by Defendant for the court to review.  Plaintiffs' request for waiver of the amnesty penalty must be denied.

## III.  CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that Carolyn was indefinitely employed in the Portland metropolitan area during the 2007 tax year and may not deduct unreimbursed employee business travel expenses for her employment in Portland during the 2007 tax year.  The court further finds that Robert's four jobs in 2007 were each temporary and that his "tax home" in 2007 was his personal residence in Albany, Oregon. Thus, Robert may deduct unreimbursed employee business travel expenses related to his

---

[6] Defendant's Notice states: "ORS 105-305.100-(c)(7)(d) explains the waiver of the amnesty penalty. Relief under this type of waiver is only if there was some circumstance beyond your control at the time the amnesty program was conducted, 9/09 - 11/19/09, which caused you to be unable to participate in the program.  The interpretation is similar to ORS 150-305.145, like you were out of the county, in the hospital, had a catastrophic event like fire, earthquake, flood." (Ptfs' Compl at 5.)  The Notice does not state whether Plaintiffs requested waiver of the amnesty penalty or whether Defendant denied Plaintiffs' request for waiver.  (*Id.*)

employment in Mt. Hood, Gresham, Portland, and Gladstone, Oregon in 2007.  Plaintiffs'

request that the court waive the 2007 amnesty penalty is denied.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Defendant shall recalculate Plaintiffs'

2007 tax liability to conform with the court's determinations.

Dated this ____ day of October 2012.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on October 24, 2012.  The Court filed and entered this document on October 24, 2012.*