IN THE OREGON TAX COURT
REGULAR DIVISION

Dean G. MOREY
and Dee M. Morey,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4638)

Joseph Wetzel, Wetzel DeFrang & Sandor, Portland, argued the cause for Plaintiffs (taxpayers).

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision rendered November 24, 2004.

## HENRY C. BREITHAUPT, Judge.

## I. INTRODUCTION

This matter is before the court on a stipulated record. The parties have asked this court to rule on one issue: whether the travel expenses Dean Morey actually incurred during the 1997 and 1998 taxable calendar years are deductible for Oregon income tax purposes under Internal Revenue Code (IRC) section 162(a) (as amended in 1986).

## II. FACTS

Dean Morey is a pipefitter, a profession in which he initially performed an apprenticeship in the late 1960s. During the 1997 and 1998 taxable calendar years, Dean Morey was a member of UA Local Union 290 (the union). The union used a hiring hall and "ladder" system, which assigns work to its members on a first-come, first-served basis. During 1997-98, Dean Morey worked as a pipefitter only on jobs assigned to him by the union.

As a pipefitter, and during the time at issue, Dean Morey worked as follows:

| LOCATION | START DATE | END DATE |
|---|---|---|
| Aloha, Oregon | May 25, 1995 | March 11, 1997 |
| Coos Bay, Oregon | March 12, 1997 | April 4, 1997 |
| Eugene, Oregon | April 14, 1997 | December 31, 1997 |
| Eugene, Oregon | January 6, 1998 | February 28, 1998 |
| Hillsboro, Oregon | March 2, 1998 | June 17, 1998 |
| Eugene, Oregon | July 8, 1998 | December 21, 1998 |

Taxpayers testified that Dean Morey never specifically knew the length or location of each successive pipefitting job. John M. Endicott (Endicott), the associate business manager for the union, also testified that no guarantees existed in the pipefitting trade. Endicott, however, also testified that the metropolitan areas of Eugene and Portland, Oregon, experienced an unusually high rate of employment during 1997-98. In particular, he testified as to the existence of a "very, very large high tech job in the Eugene area" during that period. Endicott testified that he had seen Dean Morey

on high-tech job sites and that Dean Morey had a good reputation in the industry. The record also contains a statement from Endicott indicating that "[a]n individual may experience long term employment with one contractor or continuous employment with a number of contractors during the same time frame."

When Dean Morey began working in Eugene in April 1997, he initially stayed in an area motor inn. Within three days, however, Dean Morey began renting a space for his RV in that general area as was his routine while away from Coquille for extended lengths of time. While lodging in his RV, Dean Morey incurred expenses related to food and the use of the RV. Dean Morey also received mail at that location and installed phone service.

Dean Morey's standard practice was to drive to Coquille on the weekends and during the periods in which he was not employed as a pipefitter. The Moreys (taxpayers) have owned a 73-acre ranch (the Morey ranch) in Coquille since approximately 1990. Dee Morey operates the ranch full time and taxpayers claim trade or business expenses related to the ranch on their joint tax return. Such deductions have been allowed by federal and state agencies.

Dean Morey worked at the Morey ranch whenever he returned from his pipefitting employment. Among other tasks, Dean Morey was personally responsible for working on the pump, laying pipe, loading animals, and castrating animals. Although Dee Morey testified that Dean Morey came home for the purpose of being home, Dean Morey was involved in all aspects of the ranch. Dean Morey kept abreast of ranch operations and read trade magazines during the week while he was away from the ranch. Taxpayers rarely, if ever, took vacations.

Despite their efforts, the ranch did not produce a profit, except in 1997 when taxpayers sold their cow-calf operation. In place of that operation, taxpayers started a steer operation. During the period of transition between the cow-calf operation and the steer operation, Dee Morey spent substantial time with Dean Morey in his RV in the Eugene area.

For the 1997 and 1998 taxable calendar years, Dean Morey claimed travel expenses from Coquille to all his pipe-fitting jobs in Aloha, Hillsboro, and Eugene. Dean Morey also claimed expenses related to food and lodging at those work sites. Defendant Department of Revenue (the department) denied deductions for those expenses. After a trial, the magistrate determined that Dean Morey's tax home was the Portland metropolitan area through mid-April 1997 and Eugene thereafter through the end of 1998. The magistrate ruled that Dean Morey was entitled to deduct travel expenses only for the period from March 2, 1998 to June 17, 1998. Taxpayers appealed to the Regular Division.

## III.  ISSUE

Are Dean Morey's travel expenses incurred during the 1997 and 1998 taxable calendar years deductible for Oregon personal income tax purposes under IRC section 162(a)?

## IV.  ANALYSIS

The Oregon legislature intended to make Oregon personal income tax law identical to the IRC for purposes of determining taxable income, subject only to modifications specified in Oregon law. ORS 316.007.[1] As a result, the legislature adopted by reference the federal definitions for deductions, including IRC section 162(a) related to trade or business expenses. Section 162(a) states, in part:

> "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including —
>
> "* * * * *
>
> "(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business[.]"

To deduct travel expenses, taxpayers must show that the expenses (1) were incurred in connection with a trade or business; (2) were incurred while away from home; and

---

[1] All references to the Oregon Revised Statutes (ORS) are to 1997.

(3) were reasonable and necessary. *Finn v. Dept. of Rev.*, 10 OTR 393, 395 (1987). Taxpayers, as the appealing party, bear the burden of proof. ORS 305.427.

■ At issue in this case is whether Dean Morey's travel expenses were incurred while he was "away from home." In general, a taxpayer's home for the purposes of section 162(a)(2)—*i.e.*, the taxpayer's "tax home"—is the taxpayer's principal place of business or employment. *Harding v. Dept. of Rev.*, 13 OTR 454, 459 (1996) (citing Rev Rul 83-82, 1983-1 CB 45). That general rule, however, is subject to an exception: the taxpayer's personal residence is the individual's tax home if the principal place of business is "temporary," as opposed to "indefinite" or "indeterminate." *Peurifoy v. Commissioner*, 358 US 59, 60, 79 S Ct 104, 3 L Ed 2d 30 (1958). That exception is in turn subject to an exception found in the flush language of section 162(a), which provides that any employment period in excess of one year is *per se* indefinite. Thus, the court must resolve three issues: (1) whether the one-year rule in the flush language of section 162(a) applies to this case; (2) for periods in which the one-year rule does not apply, whether Coquille or some other location was Dean Morey's tax home in 1997 and 1998; and (3) whether Dean Morey may deduct travel expenses between his tax home(s) and the location of any other business activity.

## A. *The One-Year Rule in IRC Section 162(a)*

The flush language of section 162(a) states in pertinent part that "[f]or the purposes of [section 162(a)(2)], the taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year." Taxpayers initially disagreed as to the applicability of that provision to the facts of this case. At oral argument, however, taxpayers conceded that that provision applies to deny deductibility for travel expenses that Dean Morey incurred from January 1, 1997 to March 11, 1997, because that period of employment began on March 25, 1995, over 21 months previously. This court concludes, therefore, that Dean Morey's tax home was Aloha for the period from January 1, 1997 to March 11, 1997.

## B. *Dean Morey's Tax Home After March 11, 1997*

■■ The court is cognizant of the fact that cases involving construction workers such as Dean Morey present difficult tax-home determination questions because those individuals often must travel to various job sites at substantial distances from their residences. *See Peurifoy*, 358 US at 62 (Douglas, J., dissenting) ("It would be an intolerable burden for [construction workers] to uproot their families whenever they change jobs, if those jobs happen to take them to a different locality"). Courts, however, have "uniformly rejected, in the construction industry context, the contention that work is temporary if it involves traveling to various worksites." *Yeates v. Commissioner*, 873 F2d 1159, 1162 (8th Cir 1989) (citing *Dahood v. United States*, 747 F2d 46, 49 (1st Cir 1984); *Kasun v. United States*, 671 F2d 1059, 1062 (7th Cir 1982)). *See also Peurifoy*, 358 US at 59-60. In addition, the mere existence of duplicative housing expenses or a choice by the taxpayer of one place of abode over another is not dispositive. *See Hoeppner v. Commissioner*, 64 TCM (CCH) 1493 (1992). As a result, this court must follow the appropriate legal standard to decide whether and when Dean Morey was away from home for the purposes of section 162.

Neither party has articulated a single standard, or even distinct alternative standards, from which the court may uniformly determine the location of Dean Morey's tax home. Moreover, the parties have not squarely placed before this court the issue of which standard is applicable. Taken in turn, however, taxpayers have not met their burden of proof under any of the proposed standards; thus, this court need not address which legal standard is controlling.

### 1. *"Reasonable Probability" Standard*

■ Taxpayers assert that this court must follow a standard articulated by the Ninth Circuit. Under that approach, "[a]n employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes 'a long period of time' varies with circumstances surrounding each case." *Harvey v. Commissioner*, 283 F2d 491, 495 (9th Cir 1960). Taxpayers assert that Dean Morey's individual pipefitting assignments

were temporary because he subjectively could not have known the length of each job on acceptance and therefore his tax home was Coquille from mid-March 1997 through the end of 1998.

Taxpayers identify a number of references in the record which support the position that Dean Morey did not know with precision the length of each of his successive pipefitting assignments. For example, Dean Morey's union employed a ladder system in which jobs were assigned on a first-come, first-served basis. Taxpayers presented evidence indicating that Dean Morey could have been employed over a three-state area and that Dean Morey did not know how long each job would last or where the next job might be located. Endicott, the union representative, also testified that no guarantees existed in this field as to the length of employment. Although the above evidence supports a conclusion that Dean Morey did not know exactly how long each job would last, that conclusion is not dispositive because certainty is not required under the standard advocated by taxpayers.

Dean Morey must show that he had no factual basis from which to conclude, with a reasonable probability, that he would be employed for a long period of time at the new job site. *Id.* Although they are not required to prove a negative, taxpayers must offer some evidence, such as the type of job and employer, the expectations of that employer, or expectations of the customer, from which the court may determine whether a reasonable probability was known to Dean Morey that he would be employed only for a short period of time at the new location. The court finds that the aspects of the pipefitting work that Dean Morey testified to, such as the inherent risk that he might be laid off at any time and the impractical nature of having to move from job site to job site, are true of most, if not all, construction jobs. If taxpayers could come to the court under the standard that they propose with nothing more than testimonial evidence indicating that "nothing is certain" or "you never know what your next job is going to be," then arguably a new exception would be carved out for construction workers, because of the inherently uncertain nature of their work generally. As noted, such an exception has been routinely rejected by the courts. *Yeates,* 873

F2d at 1159; *Kasun*, 671 F2d at 1062. *See also Peurifoy*, 358 US at 59-60.

Not only have taxpayers failed to introduce evidence about the nature and expected duration of the jobs Dean Morey had from mid-March 1997 through the end of 1998, the record indicates that his work in Eugene could have lasted a substantial duration of time. Endicott testified that beginning around 1996 a large amount of high-tech computer manufacturing jobs became available in the Portland and Eugene metropolitan areas. In fact, Dean Morey finished a continuous, 21½-month employment in Aloha in March 1997. Endicott also testified that "[e]mployment was very good in Eugene," in part because "a very, very large high-tech job in the Eugene area * * * demanded a lot" of union workers. Endicott further testified that Dean Morey was highly skilled and experienced in high-tech pipefitting work, such as orbital welding, and that he had seen Dean Morey at high-tech job sites. The record also contains a statement from Endicott indicating "[a]n individual may experience long term employment with one contractor or continuous employment with a number of contractors during the same time frame."

Dean Morey's own actions also indicate that he expected each of his jobs in the Eugene and Portland metropolitan areas to last a long period of time. For example, although Dean Morey initially stayed at a motor inn in Eugene at the outset of his employment in the Eugene area in April 1997, within three days he rented a space for his RV on a monthly basis at a local RV park. When Dean Morey worked in Hillsboro during early 1998, however, he immediately began renting a space for his RV. While staying at the Eugene-area RV park, Dean Morey apparently had a phone line installed. Based on that evidence and the record as a whole, this court concludes that Dean Morey has failed to show that no reasonable probability, known to him, existed that he might have been employed for a long period of time when he accepted employment in the areas of Portland or Eugene.

## 2. *Three-Part Objective Standard*

The department contends that the applicable standard is an objective one that considers three factors: (1) the

length of time Dean Morey spent in each of the locations; (2) the degree of Dean Morey's business activity in each location; and (3) the relative proportion of Dean Morey's income derived from each location. *See, e.g., Folkman v. United States*, 615 F2d 493, 496 (9th Cir 1980). Although taxpayers did not attempt to meet their burden under that standard (instead relying primarily on the reasonable probability standard), the record supports a conclusion that the department would prevail if the court applied that standard. For example, Dean Morey spent the majority of the period from mid-March 1997 through the end of 1998 in Eugene, he performed the vast majority of his pipefitting work in that locale, and he earned most of his income there. The court finds, therefore, that if the department's proposed three-part objective standard is applicable, taxpayers would not prevail in this case.

The department's use of that standard, however, is problematic. At least in the Ninth Circuit, where the subjective standard is apparently preferred, the three-part objective standard is applicable only when the taxpayer earns "substantial income" while employed in more than one location. *Id.* at 495. The department apparently seeks to use that standard to decide whether Eugene or Coquille was Dean Morey's tax home. Here the record indicates that the Morey ranch operation was not a source of "substantial income" during 1997 and 1998; thus, that standard would appear to be inapplicable in this situation because Dean Morey did not have "substantial income" in Coquille. Moreover, that assertion undermines the department's position—discussed below—that the Morey ranch was not a secondary business for Dean Morey.

Based on the foregoing, the court finds that taxpayers would not prevail under the three-part objective standard proposed by the department, if in fact that standard was applicable in this case. The court concludes, however, that the department has not properly placed the facts of this case within the standard that it has proposed.

3. *"Objective Foreseeability" Standard*

The parties, by way of implication, raise one final standard that uses an objective, rather than subjective, test to evaluate whether the taxpayer should have foreseen that the job would last a long period of time. *Ellwein v. United*

*States*, 778 F2d 506, 510 (8th Cir 1985) ("The fact finder must objectively determine the length of employment the taxpayer should have foreseen in the new location."). *See also Hanna v. Commissioner*, 63 TCM (CCH) 2920 (1992) ("The question * * * is essentially a factual one. No single element is determinative, and there are no rules of thumb, durational or otherwise."). Taxpayers have not met their burden under that standard because taxpayers have not placed facts into the record sufficient to support a conclusion that the job he was taking in the Eugene or Portland metropolitan area would last only a short period of time.

Such an absence of factual support was not the case in the decisions on which taxpayers rely. For example, taxpayers cite one case in which a building contractor performed a number of temporary positions while maintaining a furniture factory at his permanent residence. *Hanna*, 63 TCM (CCH) 2920. In that case, however, the court determined that each successive job was of a short duration and carried with it no expectation of continued employment. *Id*. The court based its determination on a record that contained many facts related to the taxpayer's jobs, such as the identity of the employer, the length of the projects, and the contractual expectations of the taxpayer and the contracting party.

Here, the record is void of such specifics. Although the record indicates the general contractor that Dean Morey worked for and the area in which the work was based, the record contains no information as to the actual jobs themselves, such as the identity of the customer or the expectations that the customer or the general contractor had as to the length of each job. The record merely contains general statements that Dean Morey did not know the specifics of each job he accepted.

The record does indicate, however, that Dean Morey had just finished one long-term job in an area that was experiencing an increased amount of high-tech employment. The record also indicates that Dean Morey could reasonably have expected at least some successive similar jobs in the Portland or Eugene area to last for a long term because such jobs existed in those areas. Taxpayers have not introduced any evidence indicating that Dean Morey's jobs from mid-March

1997 through the end of 1998 were any different from the one that lasted from mid-1995 through early 1997. Unlike the detailed record that led the *Hanna* court to conclude that the taxpayer had no expectation of long-term employment, the record in this case supports at least an inference that Dean Morey could have expected each job he accepted in the Portland and Eugene areas during 1996 and 1997 to last for an indefinite period. Taxpayers have introduced no evidence to rebut that inference.

Based on the foregoing, taxpayers have not met their burden of proof, regardless which standard the court applies in this case. The department, however, conceded at oral argument that, if Dean Morey's tax home was determined to be in the Eugene area from mid-March 1997 through the end of 1998, taxpayers could deduct Dean Morey's travel expenses pursuant to IRC section 162(a)(2) from Eugene to Hillsboro from March 2, 1998 to June 17, 1998, because during that time Dean Morey had a job away from Eugene. Although that result does not necessarily follow from the application of the subjective standard advocated by taxpayers,[2] the court concludes Dean Morey's tax home from mid-March 1997 through the end of 1998 was as follows: Coquille from March 12, 1997 to April 13, 1997, and from December 22, 1998, through the end of 1998; and Eugene from April 14, 1997 to December 21, 1998.

C. *The Deductibility of Travel Expenses From the Tax Home to Another Business Activity*

Having established Dean Morey's tax homes for the purpose of IRC section 162(a)(2), the question becomes whether he may properly deduct travel expenses related to travel away from his tax homes and the Morey ranch. As a threshold matter, the court must determine whether the ranch was a secondary business for Dean Morey. In order to qualify as a trade or business, taxpayers must show that Dean Morey was continually and regularly involved in

---

[2] Under the subjective approach, the court might well have determined that Dean Morey's tax home was Hillsboro from March 2, 1998 to June 17, 1998, because on a looking-forward basis Dean Morey would have needed to show facts regarding the Hillsboro job sufficient to establish that his expectation of employment was merely temporary. Dean Morey did not submit such evidence.

the activity during 1997 and 1998 and that his primary purpose for engaging in the activity was for income or profit. *Commissioner v. Groetzinger*, 480 US 23, 27, 107 S Ct 980, 94 L Ed 2d 25 (1987). The department argues at length that the ranch was merely a "fulfillment" activity for Dean Morey. The department, however, apparently concedes that the ranch was a business insofar as Dee Morey is concerned. The court finds that the record supports a conclusion that Dean Morey was equally involved in the ranch when he was in Coquille and that he actively managed the ranch with Dee Morey. Thus, this court concludes the Morey ranch was a secondary business for Dean Morey.

■ Notwithstanding the fact that the ranch was a secondary business for Dean Morey, taxpayers must demonstrate that Dean Morey's primary purpose for returning to Coquille was not personal. Income Tax Reg § 1.162-2(b)(2). That determination depends on the facts and circumstances of each case. *Id.* Instructive in the determination is the Tax Court's ruling in *Rider v. Commissioner*, 55 TCM (CCH) 1200 (1988).

In *Rider*, the taxpayer earned a steady income as a pilot. When the taxpayer was not working as a pilot, he owned and operated a 27-acre farm with his spouse, who apparently worked the farm while the taxpayer was away. The taxpayer engaged in all aspects of the farm when he returned home from his employment as a pilot. Although the taxpayer never realized a profit on the farm, he believed that he would eventually earn a profit once he retired the debt on the property. Nonetheless, the court stated:

> "[W]e are persuaded that [the taxpayer's] primary purpose in traveling to Ohio was to be at home in the popular sense of the word. It was his residence. [The taxpayer] enjoyed living there. He thought it was a good place to raise children. We believe that *he would have traveled home even if he didn't have farm work to do.*"

*Id.* (emphasis added).

Here, the facts are admittedly similar. Dean Morey earned his income away from home as a pipefitter and returned home to operate a 75-acre ranch with his spouse. Taxpayers testified that Dean Morey was integrally involved in the planning and operation of the ranch. The Morey ranch

operation was only able to turn a profit for the sale of its cow-calf operation, and then returned to a net loss for the next tax year. Taxpayers also believed the ranch would eventually turn a profit.

The facts, however, materially differ from those in *Rider* as to the issue of Dean Morey's intent for returning to the ranch. Whereas Rider would have returned home whether or not he worked the farm, the record here indicates that Dean Morey's primary purpose in returning to Coquille was to work at the ranch. Taxpayers testified that Dean Morey worked at all times that he was on the ranch and that they rarely, if ever, took vacations. Most telling, however, was the winter of 1997-98, in which taxpayers sold the cow-calf operation. During that period, Dee Morey left the ranch to stay with Dean Morey in Eugene. This court finds that if Dean Morey had a primarily personal reason for returning to the ranch, he would have done so even at those times in which a lack of ranching activity eliminated the need for him to be there on an ongoing basis. This court concludes, therefore, that Dean Morey did not have a primarily personal reason for returning to the Morey ranch from his tax homes during 1997 and 1998.

## V. CONCLUSION

Based on the foregoing reasons, this court holds that taxpayers may deduct travel expenses for Dean Morey's business travel between his non-Coquille tax homes and the ranch. Now, therefore,

IT IS THE DECISION OF THE COURT that Dean Morey's tax home was Aloha, Oregon, from January 1, 1997 to March 11, 1997; Coquille, Oregon, from March 12, 1997 to April 13, 1997, and from December 22, 1998 to December 31, 1998; and Eugene, Oregon, from April 14, 1997 to December 21, 1998;

IT IS FURTHER DECIDED that taxpayers may deduct Dean Morey's travel expenses for business travel from Hillsboro to Coquille from January 1, 1997 to March 11, 1997; from Eugene to Hillsboro from March 2, 1998 to June 17, 1998; and from Eugene to Coquille from April 14, 1997 to December 21, 1998.

Costs to neither party.