IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| BRYAN J. FISCHER and JERRI L. WEDDLE, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 160121C |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appealed Defendant's Notice of Assessment, dated February 2, 2016, for the

2012 tax year. Trial was held in the courtroom of the Oregon Tax Court on November 14, 2016.

Douglas S. Chiapuzio, attorney-at-law, appeared on behalf of Plaintiffs, and Plaintiffs both

testified. Greg Harris appeared and testified on behalf of Defendant. Plaintiffs' exhibits A to G

and Defendant's exhibits A to H were admitted without objection.

## I. STATEMENT OF FACTS

During the period under appeal, Plaintiff Bryan J. Fischer (Fischer) worked as a pile buck

for Hamilton Construction Company (Hamilton Construction). He built bridges. His typical

duties included welding, working with cranes, and constructing and tearing down the temporary

structures used as platforms from which other tradesmen built permanent spans. He often

performed work off the ground and over water, 200 feet in the air, exposed to wind and rain. His

shifts typically lasted from 8 to 12 hours, and occasionally as long as 15 or 16 hours. In 2012, he

put in his longest hours during the four weeks he worked in Alaska—126 hours of overtime

---

[1] This Final Decision incorporates without change the court's Decision, entered March 31, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

altogether.  (See Ptfs' Ex D at 1.)

Fischer worked at different job sites for greater or lesser periods of time.  (*See* Ptfs' Exs C, D.)  Although the total time to complete a bridge might be several years, Fischer testified that pile bucks are pulled off of particular jobs once they get "above ground"—presumably once the temporary structure is complete—at which point carpenters and laborers come in.  When the company was shorthanded at a given site, pile bucks might remain for a time to assist the carpenters and laborers.  However, Fischer never expected to stay at a job site for more than a year because his specialized skills were in demand at multiple sites.  When his employer required him at a different site, he would receive notice as little as a week before; such was the case with his transfer to the site in Alaska.

Fischer worked at four job sites in 2012: Troutdale, Oregon; Montpelier, Idaho; Seward, Alaska; and Vancouver, Washington.  (*See* Ptfs' Exs C, D.)  Fischer worked at Troutdale through the first week of August, with an interruption of less than a week for the Montpelier job.  (*Id.*)  His start date at Troutdale is unknown.  Fischer offered no testimony on that point and he declined to explain why he had not provided documentation of his 2011 work activity, as he had done for his 2012 and 2010 activity.[2]  His 2012 job sites are summarized in the following table.

| Location | Start | End |
|---|---|---|
| Troutdale, Oregon | No later than January 2, 2012 | August 7, 2012 |
| Montpelier, Idaho | June 10, 2012 | June 13, 2012 |
| Seward, Alaska | August 8, 2012 | September 2, 2012 |
| Vancouver, Washington | September 3, 2012 | September 14, 2012 |

(*Id.*)  In 2010, Fischer worked at a single site all year, except for part of one week.  (Def's Ex E at 1.)

---

[2] At closing, Defendant's representative stated that Fischer had testified to having started the Troutdale job in October or November during 2011.  Plaintiff's representative then repeated that claim in his rebuttal.  The court's review of the record indicates that Fischer testified to having worked a job in Coos Bay that October or November.

Plaintiffs maintained their marital home in Salem, the city where Plaintiff Jerri L. Weddle (Weddle) worked. Fischer stayed in a travel trailer while working in Troutdale and Vancouver. He parked his trailer in the same location for both jobs, in a space rented by his employer. He testified that his employer would have paid for him to stay in a motel, if space in a motel were available, but that he found it more convenient to stay in the trailer. He found that he rested better in a trailer, he did not need to pack his things up when he returned to Salem on the weekends, and he was closer to the job site in case his employer called him back after his shift was over. Fischer testified that he first used the trailer on a job site in Coos Bay, in October or November of 2011. Plaintiffs had purchased the trailer on April 3, 2011. (Ptfs' Ex G.)

Hamilton Construction did not have a standard reimbursement policy, but instead allowed its project managers to negotiate *per diem* rates and expense reimbursements with individual employees. (Ptfs' Ex E at 1.) In 2012, Fischer did not receive reimbursement for his mileage or for the hand tools and clothing he was required to purchase. In addition to paying for his space in the Troutdale RV park, Hamilton Construction also paid for Fischer's motel rooms in Alaska and Idaho.

Plaintiffs submitted a 2012 calendar with job sites and mileage noted on dates of travel. (Ptfs' Ex C.) That calendar and Fischer's testimony showed the following typical pattern for Fischer's travels while he worked in Portland.

| Day | Travel Activity |
|---|---|
| Monday | AM: Salem to Portland |
| | PM: Portland to Salem |
| Tuesday | AM: Salem to Portland |
| Friday or Saturday | PM: Portland to Salem |

Fischer testified that he regularly returned to Salem to help his wife on Monday evenings because overtime was never required on Mondays. The distance reported for the round trip was

124 miles to Troutdale and 118 miles to Vancouver. (Ptfs' Ex C at 8, 9.) Fischer drove a total of 124 miles to and from the airport for the Alaska job. (*Id*.) No mileage was reported for the Idaho job.

Plaintiffs and Defendant submitted receipts for tools and clothing. (Ptfs' Ex F; Def's Ex H.) Several of the receipts were dated outside the year at issue, some of the receipts reflected expenses for which Defendant had allowed deductions, one of the receipts was a duplicate, and one receipt did not show a price. (*Id.*) Nonduplicative 2012 receipts showing prices were admitted for the following disallowed expenses: a jacket from Under Armour ($39.97), several pairs of heavy-duty jeans ($179.17 total), two tee shirts ($26.94 total), and a trowel and a float that were purchased along with a piece of glass tile ($7.66 total). (Ptfs' Ex F at 5, 8; Def's Ex H at 1, 3–4.)

Fischer testified that his employer required him to provide his own clothing suitable for working in all kinds of weather. He testified that welding, in particular, was damaging to clothing on account of burns from sparks, and that, once worn to work, his clothing was no longer suitable for wear outside of work. Fischer also testified that his employer required him to purchase his own hand tools. While testimony referred to the existence of meal expenditures, no evidence of meal expenses was introduced.

## II.  ANALYSIS

This case presents the following issues:

(1)  Whether Plaintiffs may deduct traveling expenses under Internal Revenue Code (IRC) section 162(a)(2) for Fischer's weekly trips between Salem and Portland.

(2)  Whether Plaintiffs may deduct daily commuting expenses under IRC section 162(a) for Fischer's Monday trips between Salem and Portland.

(3)  Whether Plaintiffs may deduct depreciation under IRC section 167(a) for the travel trailer in which Fischer lodged while at the Portland job sites.

(4) Whether Plaintiffs are entitled to business expense deductions under IRC section 162(a) for purchases of tools and clothing used by Fischer in his work.

(5) Whether Plaintiffs are subject to the 20-percent penalty under ORS 314.402 (2011) for substantially understating their taxable income on their return.[3]

(6) Whether Plaintiffs are subject to the 5-percent penalty under ORS 314.400(1) for failure to timely pay their tax.

Subject to exceptions not pertinent here, Oregon has adopted the federal definition of taxable income, a definition that includes the deductions allowed under chapter 1 of the Internal Revenue Code. *See* ORS 316.022(6); IRC § 63(a). Oregon follows "the administrative and judicial interpretations of the federal income tax law." ORS 314.011(3). Where federal courts give conflicting interpretations, Oregon follows the "rule observed by the United States Commissioner of Internal Revenue." *Id*. Plaintiffs, as the party requesting relief from the court, must bear the burden of proof. *See* ORS 305.427.

A. *Tax Home-Related Deductions*

Plaintiffs' deductions for mileage and for depreciation of a travel trailer all relate to Fischer's tax home in 2012. The mileage deductions were of two types: traveling expenses for the periods over which Fischer stayed in Portland and daily commuting expenses for the days that Fischer made the round trip from Salem to Portland and back without sleeping in Portland.

1. *Traveling Expenses*

Traveling expenses are deductible under IRC section 162(a)(2) for those who are "away from home in the pursuit of a trade or business[.]" To be "away" from home, a taxpayer must be on a trip requiring sleep or rest. *United States v. Correll*, 389 US 299, 306–07 (1967) (upholding IRS rule to that effect).

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

A taxpayer's "tax home" is the place signified by the word "home" in IRC section 162(a)(2). The concept is used by the courts to distinguish between traveling expenses incurred for business and those incurred for personal reasons, on the theory that a taxpayer's personal choice to live in a distant location does not generate a business reason for traveling to work. *See Ellwein v. United States*, 778 F2d 506, 510 n 3 (8th Cir 1985). The two places that typically compete for the title of tax home are one's personal residence and the locale of one's job. Which place is one's tax home depends on whether the job is "temporary" or "indefinite," as related by this court in *Morey v. Department of Revenue*, 18 OTR 76, 81 (2004):

> "In general, a taxpayer's home for the purposes of section 162(a)(2)—*i.e.*, the taxpayer's 'tax home'—is the taxpayer's principal place of business or employment. *Harding v. Dept. of Rev.*, 13 OTR 454, 459 (1996) (citing Rev Rul 83-82, 1983-1 CB 45). That general rule, however, is subject to an exception: the taxpayer's personal residence is the individual's tax home if the principal place of business is 'temporary' as opposed to 'indefinite' or 'indeterminate.' *Peurifoy v. Commissioner*, 358 U.S. 59, 60 (1958). That exception is in turn subject to an exception found in the flush language of section 162(a), which provides that any employment period in excess of one year is *per se* indefinite."

The result of the flush language of section 162(a) is that any site at which a taxpayer has worked more than a year is automatically that taxpayer's tax home. It makes no difference if the taxpayer's spouse works elsewhere—tax homes of spouses engaged in separate businesses are determined separately. *Hammond v. Comm'r*, 20 TC 285 (1953).

The law on when a tax home shifts mid-year in less clear. In *Morey*, this court summarized three tests used by the federal courts of appeals to determine the location of a taxpayer's principal place of employment, without determining which test applied in Oregon. 18 OTR at 82–87. One test applied by the Ninth Circuit is a subjective one, in which the tax home shifts when the taxpayer knows of a reasonable probability that employment at the new location will last "a long period of time." *Id*. at 82–84 (citing *Harvey v. Comm'r*, 283 F2d 491,

495 (9th Cir 1960)). Another test applied by the Ninth Circuit is an objective one, in which the court weights the length of time, degree of business activity, and proportion of income derived from each place of employment in a given year. *Id*. at 84–85 (citing *Folkman v. United States*, 615 F2d 493, 496 (9th Cir 1980)). A final test, applied by the Eighth Circuit, requires the court to determine whether the taxpayer should have foreseen that the employment at the new location would last a long period of time. *Id*. at 85–86 (citing *Ellwein v. United States*, 778 F2d 506, 510 (8th Cir 1985).

Here, Plaintiffs' necessity of bearing the burden of proof tells heavily against them. The record before the court shows that Fischer worked at Troutdale for roughly the first seven months of 2012. Plaintiffs offered no exhibits and no testimony regarding Fischer's start date at Troutdale. Fischer did testify elsewhere that he used his travel trailer on a job in Coos Bay in October or November 2011. That testimony did not reveal whether the Coos Bay job preceded the Troutdale job or merely interrupted it, the way the Montpelier job did in 2012. When cross-examined about why he did not provide work records for 2011, Fischer stated that he did not have an explanation. Although Fischer testified that he understood going into his jobs that they would not last longer than a year, he did not testify to the actual length of time of the Troutdale job. Fischer did work long jobs; in 2010, at least, he spent the entire year at one location.

Because Plaintiffs submitted no evidence to show that Fischer's Troutdale job lasted one year or less, they did not bear their burden to show that Fischer's work in the Portland area was temporary. The flush language of IRC section 162(a) prohibits treating job sites lasting more than one year as temporary. The court therefore finds that Fischer's 2012 tax home was the Portland area until at least August 7.

/ / /

As to the period after August 7, 2012—during which Fischer worked in Alaska for one month before returning to Portland—Plaintiffs have not shown that Fischer's tax home changed under any of the tests summarized in *Morey*. Fischer testified to his belief that none of his jobs would last longer than a year; he therefore knew of no reasonable probability that the Alaska job would last longer. *See Harvey*, 283 F2d at 495. Nor can the court find he should have known of such a probability—both the short notice Fischer received before transferring to Alaska and the long hours he worked once there tend to show that the job was being completed under time constraints. It was reasonable to suppose that the job would end with the waning of the summer. *See Ellwein*, 778 F2d at 510. Finally, Fischer spent by far the greater amount of his working time in Portland and earned the greater proportion of his business income there. *See Folkman*, 615 F2d at 496. Accordingly, the court concludes that Fischer's tax home remained the Portland area during the whole of 2012.

Because Fischer's tax home was Portland, Defendant properly disallowed Plaintiffs' mileage deductions for overnight travel to jobs in Troutdale and Vancouver. Consistent with that conclusion, Plaintiffs should be allowed a deduction for the 124 miles Fischer traveled round trip to the airport for his Alaska job. Plaintiffs did not report any mileage for Fischer's Idaho job.

2.      *Daily Commuting Expenses*

Although deductions for the expenses of daily commuting—*i.e.*, trips not requiring sleep or rest—are generally disallowed, an exception allows such deductions to taxpayers who live and normally work in the same area but must commute to a temporary work location outside that metropolitan area. Treas Reg § 1.262–1(b)(5); Rev Rul 99–7, 1991 CB 361. An additional exception allows taxpayers with regular work locations away from their residences to deduct daily commuting expenses to temporary work locations. Rev Rul 99–7, 1991 CB 361. For a

taxpayer to qualify for either exception, the commute must have been to a temporary work location.

The only deduction for daily commuting expenses that Plaintiffs claimed was for Fischer's Monday commute between Salem and Portland. Because Portland was Fischer's regular work location and not a temporary location, Plaintiffs did not qualify to deduct those commuting expenses under either exception. Defendant properly disallowed Plaintiffs' deductions for commuting expenses to Portland.

### 3.      *Travel Trailer Depreciation*

The first criterion for the depreciability of any property is that it be "used in the trade or business." IRC § 167(a). A taxpayer's use of a travel trailer for lodging near a job site outside of the taxpayer's tax home may qualify for depreciation.[4] *See Jackson v. Dept. of Rev.*, TC–MD 160202C, WL 77086 (Or Tax M Div Jan 9, 2017). However, the use of a travel trailer for lodging within one's tax home is not use in the trade or business; it is for the personal convenience of the lodger. *Hixson v. Comm'r*, 38 TCM (CCH) 1155 (1979) , 1979 WL 3355 (US Tax Ct) (disallowing depreciation on travel trailer used for lodging by timber faller within his tax home).

Here, Fischer's tax home was the Portland area and his use of the travel trailer was entirely within that area. Fischer's use of the trailer was for his own convenience. *See Hixson*, 1979 WL 3355. Defendant properly disallowed a depreciation deduction for the travel trailer.

/ / /

/ / /

---

[4] At trial in this case, Defendant argued that depreciation of Plaintiffs' travel trailer was barred by IRC section 280F(a) because the trailer was a "dwelling unit." The court is not persuaded that travel trailers are included in the definition of "dwelling unit" found in section 280F(f)(1).

B.      *Clothing and Tool Expenses*

A deduction under IRC section 162(a) for the expense of work clothes is allowed only if the clothes are specifically required as a condition of employment and not adaptable to general usage as ordinary clothing. *Donnelly v. Comm'r*, 262 F2d 411, 412 (2d Cir 1959); Rev Rul 70-474, 1970-2 CB 34. Expenses for clothing adaptable to general usage do not become deductible because the clothing is soiled or otherwise subject to such hard usage that it cannot be worn apart from work. *Drill v. Comm'r*, 8 TC 902, 904 (1947) (disallowing deduction where clothing was "often soiled with plaster, cement, mud, grease, and the like"); *Robles v. Dept. of Rev.*, TC–MD 110684N, WL 265711 (Or Tax M Div July 6, 2012) (disallowing deduction for welder's jeans, trousers, work boots, and heavy-duty shirts). Clothing that is of a higher quality or a different style than the taxpayer would purchase but for the work-related need remains nondeductible. *Pevsner v. Comm'r*, 628 F2d 467, 470–71 (5th Cir 1980).

Here, Fischer's jacket, jeans, and tee shirts were adaptable to ordinary wear and no deduction may be allowed for their expense. It makes no difference that the clothing was heavier duty than he would otherwise have purchased; the standard is objective rather than subjective. *See Pevsner*, 628 F2d at 470–71. It also makes no difference that Fischer's clothing was quickly marred by burns from sparks so that he would not wear it away from work—the courts have held such considerations to be matters of "personal taste" that do not determine the right to a deduction. *See Drill*, 8 TC at 904.

With respect to the deductions at issue for two tools—a trowel and a float—Plaintiffs did not present any testimony to explain how they were used at Fischer's work. Small hand tools may be deductible under IRC section 162. *Universal Mktg. v. Comm'r*, TCM (CCH) 2007-305 (2007). The tools at issue here were purchased in conjunction with a piece of glass tile, and

Defendant's representative testified to his theory that the tools were used to install the tile at Plaintiffs' home. Fischer did not offer testimony to rebut Defendant's theory, which is supported by the receipt. Plaintiffs did not bear their burden of proof on the tool expenses.

Defendant properly disallowed deductions for clothing and tools.

C.      *Penalties*

1.      *Substantial Understatement of Income*

Under ORS 314.402 (2011), Defendant was required to impose a 20-percent penalty on taxpayers who understated their taxable income by $15,000 or more. Any items on the return for which the taxpayer had substantial authority, or for which the taxpayer had a reasonable basis and had adequately disclosed the relevant facts, were not to be included in the calculation of the understatement. ORS 314.402(4)(b).

Here, Defendant adjusted Plaintiffs' taxable income by $31,718 and the court has upheld virtually all of those adjustments. (Def's Ex B at 5.) Plaintiffs did not present any substantial authority to justify any disallowed items, given the court's finding with respect to Fischer's tax home. And Plaintiffs did not disclose the relevant facts to support any items for which they had a reasonable basis—indeed, the court's determination of tax home rests largely on Plaintiffs' failure to reveal when Fischer began working at Troutdale. Given the facts of this case, Defendant properly imposed the 20-percent substantial understatement penalty.

Plaintiffs request the court to waive the penalty because they filed in good faith. The court believes Plaintiffs testified truthfully at trial. Furthermore, this court has previously recognized that determining construction workers' tax homes is "difficult." *See Morey*, 18 OTR at 82. Given Plaintiffs' credibility and the difficulty of the tax issues involved, the court is sympathetic. However, the legislature has not given this court authority to waive the substantial

understatement penalty. That authority has been granted to Defendant. *See* ORS 314.402(6); OAR 150-314.0207. The court must deny Plaintiffs' request to waive the substantial understatement penalty.

2. *Delinquency*

ORS 314.400(1) requires Defendant to add a five percent delinquency penalty wherever a taxpayer fails to pay a tax by "the date on which the * * * payment is due[.]" Here, Plaintiffs did not dispute whether they paid their tax by the date it was due. Instead, they requested their penalty be reversed because they acted in good faith. As with the substantial understatement penalty, authority to waive the delinquency penalty has been granted to Defendant rather than to this court. *See* ORS 305.145; *Pelett v. Dept. of Rev.*, 11 OTR 364, 366 (1990) ("the legislature did not intend this court to review [the Department of Revenue's] discretion in waiving penalties or interest"). Plaintiff's request to waive the delinquency penalty is also denied.

III. CONCLUSION

After careful review of the evidence, the court concludes Fischer's tax home in 2012 was the Portland area. Defendant's denial of deductions for depreciation and mileage is sustained, except as to 124 miles traveled to a job site away from Portland. The court also sustains Defendant's denial of deductions for clothing and tools, and its imposition of penalties. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs are allowed a mileage deduction based on 124 miles traveled.

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that the remainder of Plaintiffs' claims for relief are denied.

Dated this ____ day of April, 2017.

POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on April 18, 2017.*