IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| DANIEL I. REUTOV and ANISIA G. REUTOV, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 220447G |
| v. | ) ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | |
| Defendant. | ) | **DECISION** |

This case concerns 2018 income and expense deductions arising from commercial fishing and boat fabrication businesses. At trial, Plaintiffs (Mr. and Mrs. Reutov) appeared *pro se* and testified. Defendant was represented by its auditor, Kellie White, and did not call any witnesses. Plaintiffs' Exhibits 1 to 10 were received into evidence; Defendant did not offer any exhibits.

## I. STATEMENT OF FACTS

Plaintiffs earned money operating two different marine businesses in 2018. From May to September, Mr. and Mrs. Reutov both fished commercially out of Cordova, Alaska. (Ex 3.) The rest of the year, Mr. Reutov ran a boat fabrication business in Canby, Oregon, often performing independent contractor work for his father's and uncle's shops. (Exs 5, 6.) Mr. Reutov's father and uncle similarly fished in Alaska during the summer and ran welding, fabrication, and rigging businesses in Canby the rest of the year.

Mr. Reutov owns his fishing vessel, which he stores in Cordova. (*See* Ex 7 at 5.) According to a bill of sale dated in 2015, he bought it from his father, Iosif, for $180,000. (Ex 7 at 1.) Mr. Reutov testified that he agreed to make payments to his father of $10,000 per year or more for the boat, depending on his fishing revenue. Canceled checks from Mr. Reutov to his

father were provided with "boat payment" in the memo lines. (Id. at 2–4.) Those checks are dated in 2015, 2016, and 2017, and total $75,000. (*Id*.)

Mr. Reutov acquired a permit to fish the Prince William Sound salmon drift gillnet fishery in 2016. (Ex 10 at 7.) He testified that commercial fishing permits are bought and sold through brokers and held for life. The purchase price of Mr. Reutov's permit was $165,000, plus $1,165 in fees, all of which was paid to the broker by Mr. Reutov's father. (Ex 10 at 7.) Mr. Reutov and his father signed a promissory note, dated April 7, 2016, in which Mr. Reutov agreed to pay his father $166,165 in yearly installments of $10,000 without interest. (*Id*. at 1.) As with the boat payments, Mr. Reutov orally agreed with his father to make larger payments when there was enough fishing income. Plaintiffs provided three canceled checks from Mr. Reutov to his father dated 2016, 2017, and 2018. (Ex 10 at 2–4.) Two of the checks had "permit payment" written on the memo line (the third memo line was blank), and the checks totaled $90,000. (Ex 10 at 2–4.)

Mrs. Reutov created a diary of Plaintiffs' Alaska trip in a day planner from just before April 26, 2018, when they left Oregon, to October 12, 2018, when they returned. (Ex 3.) Mrs. Reutov testified that she prepared that planner during the trip by talking to Mr. Reutov and looking at receipts. Each day in the planner contains a mileage total and a brief list of destinations or description of business activity. The planner records totals of 2,707 miles for the journey north to Alaska and 3,223 miles for the return south, with the latter trip including a detour for truck repairs. (Ex 3 at 1, 25.) Credit card statements in the name of Mr. Reutov show purchases in Oregon through April 26, 2018, followed by purchases in Alaska through September 23, 2018 (with purchases in Washington and Canada for short periods after those dates).

No evidence of Plaintiffs' net income from fishing was provided. According to the conference decision letter, Plaintiffs reported gross fishing receipts of $122,287. (Ex 1 at 5.)

Plaintiffs provided timecards (summarized by Mrs. Reutov in a spreadsheet prepared for trial) showing that Mr. Reutov worked 984 hours at the boat fabrication business during the period Plaintiffs were in Oregon. (Exs 5–6.) The spreadsheet identifies times worked at his father's and uncle's shops in Canby from January to April, and from October to December. (Ex 5.) Canceled checks made out to Mr. Reutov's LLC in 2018 show income totaling $30,088. (Ex 6.) Those checks are all from members of Mr. Reutov's family in Oregon and from LLCs belonging to Mr. Reutov's father and uncle.

At audit, Defendant disallowed deductions for depreciation, amortization, mileage, and traveling expenses. Defendant also increased Plaintiffs' income to recapture previously deducted depreciation and amortization, as well as to incorporate $4,251 in unknown deposits discovered during a bank deposit analysis. The conference officer upheld all adjustments.

Mrs. Reutov testified that the unknown deposits were a tax refund and reimbursements from friends. She testified that Plaintiffs occasionally made purchases for friends and family and transported them between Oregon and Alaska as a convenience. Plaintiffs provided a canceled U.S. Treasury refund check for $347 and canceled personal checks made out to Mr. Reutov totaling $2,924 with memo lines reading "trim tab hot rod," "bumbers on Rockon," and "jewelry."

Plaintiffs now ask the court to reverse most of Defendant's adjustments.[1] Defendant asks the court to sustain them.

---

[1] Plaintiffs did not present evidence contradicting conclusions reached by the auditor and conference officer denying deductions for telephone expenses and for an independent contractor's meal expenses.

## II. ANALYSIS

The issues in this case are (1) depreciation and amortization on the boat and fishing permit; (2) mileage and per diem expenses; and (3) whether Plaintiffs' excess deposits were income. The first issue depends on Plaintiffs' basis in the capital assets, and determines the resolution of the both the current year deductions and the recapture of prior years' deductions. The second issue depends on the location of Plaintiffs' tax homes, as well as on the quality of their substantiation.

The federal Internal Revenue Code (IRC) and accompanying regulations apply because Plaintiffs' Oregon taxable income is their federal taxable income, subject to additions, subtractions, and modifications not pertinent here. *See* ORS 316.022(6); 316.048; 316.032.[2] As the parties seeking to change their tax assessment, Plaintiffs must bear the burden of proof. *See* ORS 305.427.

A.      *Boat Depreciation and Permit Amortization*

Deductions are allowed for depreciation of general business property under IRC section 167(a) and for amortization of specified intangibles (including "any license, permit, or other right granted by a governmental unit") under IRC section 197. In both cases, the deduction is calculated according to a schedule applied to the property's adjusted basis. IRC §§ 167(c)(1); 197(a). Generally, purchased property's basis is its cost, which includes the money paid for it and "valid liabilities incurred in acquiring the property." *Waddell v. Comm'r*, 86 TC 848, 898 (1986); IRC § 1012(a).

Because Mr. Reutov acquired the boat and the permit by means of credit extended to him by his father, Defendant has limited Plaintiffs' deductions to an amount based on what Plaintiffs

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

had actually paid to Mr. Reutov's father by the end of 2018. Defendant argues that payments made after the year at issue cannot be added to the basis of the fishing permit and the boat because Mr. Reutov and his father were "related persons" under IRC sections 453(g) and 1239. (*See* Ptfs' Response to Recommendations, Document 2.)

IRC section 453(g) is an exception to IRC section 453(a), which generally controls the method by which a seller recognizes income when payments for a sale extend beyond a single tax year. IRC section 453(a) requires such a seller to use the "installment method"; that is, to recognize a share of the total expected profits from the sale as income each year. IRC section 453(g) provides special rules "[i]n the case of an installment sale of depreciable property between related persons." In such cases, sellers do not use the installment method; provided that either the property's fair market value or the amount of the payments is known, related sellers recognize all income in the year of the property's disposition. IRC § 453(g)(1). Where payments or market value are not fully known, related sellers recover basis ratably. *Id*. In either case, "the purchaser may not increase the basis of any property acquired in such sale by any amount before the time such amount is includible in the gross income of the seller." IRC § 453(g)(1)(C).

Defendant reasons that Mr. Reutov and his father are "related" and therefore Mr. Reutov may not increase the basis of the boat or permit until his father receives payments. *Cf*. IRC § 453(g)(1)(C). There are two errors in that reasoning. The first is that the term "related persons" is a defined term, and the definition does not include Mr. Reutov and his father. IRC section 453(g)(3) defines "related persons" by reference to IRC section 1239(b). Under section 1239(b) and its accompanying regulation, the term refers to controlling owners and their entities, beneficiaries and the trusts and estates of which they are beneficiaries, and married couples—but

not ancestors and descendants. IRC § 1239(b); Treas Reg § 1.1239–1(b). Thus, IRC section 453(g) does not apply to transactions between Mr. Reutov and his father. The second error is that IRC section 453(g)(1) requires related sellers to forego the installment method and recover the full basis in the year of sale. Even if Mr. Reutov and his father were "related persons," IRC section 453(g)(1)(C) would impose no limit on Mr. Reutov's ability to increase the basis in the year of sale because his father would have been entitled to recover the basis that same year.

Regardless of whether Mr. Reutov's father must recover his basis in the boat using the installment method, Plaintiffs' adjusted bases in the boat and the fishing permit do not depend on amounts they paid under an installment contract by a certain date. Instead, they are equal to the cost of acquiring the property, including money paid and valid liabilities incurred, reduced by amounts previously depreciated. *See* IRC § 1012(a); *Waddell*, 86 TC at 898. That remains the case even if the property's cost was paid by someone else and given to Plaintiffs; recipients of gifts that have not declined in value acquire the donor's basis in the property given. IRC § 1015(a).[3]

Here, Defendant questions whether Mr. Reutov incurred valid, enforceable liabilities to his father for either the boat or the fishing permit, pointing to alleged deficiencies in the documentation. However, a contract need not be in writing to be enforceable, and Mr. Reutov's substantial annual checks to his father for boat and permit payments support his testimony that there was an obligation. Between 2015 and 2018, Mr. Reutov wrote his father well over $100,000 in checks; the most probable explanation is that Mr. Reutov owed his father money. There is no evidence that either the boat's or the permit's purchase price was inaccurately stated

---

[3] The basis of a gift that has declined in value since the donor's purchase equals its fair market value at the time of the gift; thus, a taxpayer cannot claim a loss on a gift received. IRC § 1015(a).

in the documentation. While additional canceled checks for years after 2018 would have strengthened Plaintiffs' case, the omission of subsequent payments is explained by Plaintiffs' reliance on Defendant's assurance that payments made after the current tax year were irrelevant.

Additional evidence establishes the fishing permit's basis independently of the promissory note. The transfer request filed with the Alaska Commercial Fisheries Entry Commission shows that the permit was transferred to Mr. Reutov in April 2016 from a third party by means of a broker for $165,000. (Ex 10 at 5–6.) The purchase agreement shows the same, plus $1,165 in fees. (*Id*. at 7–13.) The cost to acquire the fishing permit was therefore $166,165. Even if Mr. Reutov had received the permit as a gift from his father, its basis would be equal to that purchase price. *See* IRC § 1015(a).

The court finds that Plaintiffs acquired the boat with a basis of $180,000 in 2015, and the permit with a basis of $166,165 in 2016. They are entitled to deduct depreciation and amortization expenses accordingly. Depreciation claimed in prior years consistent with this holding should not be recaptured.

B.      *Traveling Expenses and Mileage*

1.      *Per Diem*

Plaintiffs each claimed *per diem* traveling expenses for the time they were fishing in Alaska, which Defendant disallowed because it found their tax home was in Alaska rather than Oregon.

"Tax home" is a legal concept by which courts distinguish between personal and business-related travel. *See generally Tonkin-Zoucha v. Dept. of Rev.*, TC-MD 190022G, 2020 WL 1165270 at *2 (Or Tax M Div Mar 10, 2020). The text of IRC section 162(a) allows taxpayers to deduct the expense of business-related travel "away from home." The question

arises whether travel is business-related if the taxpayers have chosen to live far from where their business requires them to be. Resolving that question, courts have held that one's home for purposes of IRC section 162(a) ("tax home") is generally the vicinity of one's "principal place of business or employment." *Morey v. Dept. of Rev.*, 18 OTR 76, 81 (2004). The expense of traveling within one's tax home to one's principal workplace is therefore a personal expense, but the expense of traveling outside one's tax home may be deductible.

Where a taxpayer has multiple workplaces, this court determines which is the principal one by applying the test found in Revenue Ruling 54–147, 1954–1 CB 51. *See Tonkin-Zoucha*, 2020 WL 1165270 at *2–*3 (so concluding); *but cf. Morey*, 18 OTR at 82 (declining to decide what legal standard controls in Oregon). Under that test, "[t]he more important factors to be considered * * * are [1] the total time ordinarily spent by the taxpayer at each of his business posts, [2] the degree of business activity at each such post, and [3] whether the financial return in respect of each post is significant or insignificant." [4]

Under the circumstances of this case, Mr. Reutov's greater time spent working in Oregon is dispositive. He worked a significant amount and earned significant income at both posts. *See* Rev Rul 54–147. It is of secondary importance whether he earned more income in Alaska; one would expect a temporary job to be lucrative to justify its inconvenience. What matters most is that Mr. Reutov was seriously working for money while in Oregon. Both fishing and boat fabrication were real jobs for him.

This case differs from *Tonkin-Zoucha*, where the taxpayer—an international commercial real estate broker—could conduct his business from anywhere, but needed to meet clients in San

---

[4] That test closely resembles the test applied by the Sixth Circuit in *Markey v. Commissioner*, 490 F2d 1249, 1252 (6th Cir 1974), differing only in the third factor, which the *Markey* court stated as "the relative proportion of taxpayer's income derived from each place."

Francisco. That taxpayer's tax home was San Francisco even though he spent less time working there than in his home office because he had no business reason to live away from San Francisco (housing costs being a personal reason). In the present case, Mr. Reutov's boat fabrication could only be done in Oregon; he had no business reason to linger in Alaska during the off season. Mr. Reutov had the greater business need to live where his business required him to live the greater portion of the time. The court finds that Mr. Reutov's principal place of business—his tax home—was in Oregon.

The location of Mrs. Reutov's tax home must be considered separately because spouses may have different tax homes. *See Hammond v. Comm'r*, 20 TC 285, 287–88 (1953), *aff'd*, 213 F2d 43 (5th Cir 1954) (holding neither spouse entitled to traveling expenses where each worked in different city). The only employment of Mrs. Reutov for which the court has evidence is her work as a deckhand on her husband's fishing boat in Alaska.

The general rule that a taxpayer's principal place of business is that person's tax home is subject to an exception whereby "the taxpayer's personal residence is the individual's tax home if the principal place of business is 'temporary' as opposed to 'indefinite' or 'indeterminate.'" *Morey*, 18 OTR at 81 (citing *Peurifoy v. Commissioner*, 358 U.S. 59, 60 (1958)). The recurring job sites of a seasonal worker who returns year after year are considered permanent, rather than temporary places of business. Rev Rul 75-432, 1975-2 CB 60 (IRS RRU 1975); *Hebert v. Dept. of Rev.*, TC–MD 110830C, 2012 WL 2337950 at *3–4 (Or Tax M Div June 20, 2012) (so holding, citing cases).

Here, the available evidence shows that Mrs. Reutov returned annually to Alaska for work, and that she had no other place of business. Although her home was in Oregon, her tax home was Alaska because that was her principal place of business and her work there was not

temporary. *See* Rev Rul 75-432.

Plaintiffs are entitled to a single *per diem* deduction for Mr. Reutov's living expenses during his time spent in Alaska, as well his time traveling to and from Alaska. Because Mrs. Reutov's tax home was in Alaska, no deduction is allowed for her travel.

2. *Mileage*

Plaintiffs' mileage expenses are subject to the strict substantiation requirements of IRC section 274(d) because a motor vehicle is listed property. As such, they must be substantiated "by adequate records or by sufficient evidence corroborating the taxpayer's own statement." IRC § 274(d); Treas Reg § 1.274–5T(b)(6). The "adequate records" requirement is met by maintaining a mileage log or similar record. Treas Reg §§ 1.274–5T(c)(2); 1.274–5(c)(2). A mileage log need not be contemporaneous; however, it will be more credible if it is made "at or near the time of the expenditure or use." *See* Treas Reg § 1.274–5T(c)(1).

The amount of detail required in a mileage log varies by the circumstances; for example, a truck driver with an established route may simply record the length of the route and the dates on which the route was driven. Treas Reg § 1.274–5(c)(2)(ii)(C). Alternatively, a mileage log may be reconstructed from corroborating evidence, such as receipts. *Id*.

The Reutovs' Alaska diary has a mileage total circled at the bottom of each day, summarizing the miles driven for all that day's business trips. It does not record mileage per trip. Mrs. Reutov testified that she prepared the diary while Plaintiffs were in Alaska, based on conversations with Mr. Reutov and on receipts. Those receipts are not in evidence; to the extent the diary is based on them, it does not meet the requirements of IRC section 274(d).

While the diary without the supporting receipts does not substantiate the many small trips recorded within it, in conjunction with the other evidence of the Reutovs' Alaska business it

adequately substantiates Mr. Reutov's mileage to and from Cordova. *See* Treas Reg § 1.274–5(c)(2)(ii)(C). The court allows Plaintiffs a mileage deduction for the 5,930-mile round trip.

C.      *Deposits*

Mrs. Reutov testified that the deposits identified by Defendant as income were a tax refund and reimbursements from family and friends for items purchased and transported on their trips between Oregon and Alaska. Plaintiffs provided checks totaling $3,271, and Mrs. Reutov testified specifically to the transactions reflected in each check.

While Plaintiffs' evidence would have been stronger if it had included documentation of the expenses for which the checks were reimbursements, Defendant offered no countervailing evidence and did not rebut Mrs. Reutov's testimony. Neither Defendant's analysis nor the bank statements on which it was based are in evidence. On the available evidence, the court finds that Plaintiffs have carried their burden of proof to reduce the additional income imputed to them by $3,271.

## III.  CONCLUSION

Plaintiffs have shown that their gross income should be reduced and their deductions increased. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' basis in the boat was $185,000 in 2015 and they are allowed depreciation deductions accordingly.

IT IS FURTHER DECIDED that Plaintiffs' basis in the fishing permit was $166,165 in 2016 and they are allowed amortization deductions accordingly.

IT IS FURTHER DECIDED that Defendant shall reduce its adjustment to Plaintiffs' 2018 gross income for recaptured prior-year amortization and depreciation consistent with this decision.

IT IS FURTHER DECIDED that Mr. Reutov's tax home in 2018 was Canby, Oregon, and that Plaintiffs are allowed a *per diem* deduction for his traveling expenses from April 26, 2018 to October 12, 2018.

IT IS FURTHER DECIDED that Plaintiffs are allowed car and truck expenses based on a mileage of 5,930 in 2018.

IT IS FURTHER DECIDED that Defendant shall reduce its adjustment to Plaintiffs' 2018 gross income based on a bank deposit analysis by $3,271.

Dated this _____ day of July 2024.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Poul F. Lundgren and entered on July 15, 2024.*