IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

JACK B. ROY and SHELLY A. ROY,      )
      )
      Plaintiffs,      )    TC-MD 180053N
      )
      v.      )
      )
DEPARTMENT OF REVENUE,      )
State of Oregon,      )
      )
      Defendant.      )    **FINAL DECISION[1]**

Plaintiffs' appeal Defendant's Conference Decision Letter dated October 13, 2017, for the 2013 tax year. A trial was held in the Oregon Tax Courtroom on June 18, 2018, in Salem, Oregon. Plaintiffs appeared on their own behalves. Jack B. Roy (Roy) testified on behalf of Plaintiffs. Benjamin Barlow (Barlow), tax auditor, appeared and testified on behalf of Defendant. Plaintiffs' Exhibit 1 and Defendant's Exhibits A to F were received without objection.

## I. STATEMENT OF FACTS

For the 2013 tax year, Plaintiffs claimed an itemized deduction (before the 2 percent reduction) of $28,366 for unreimbursed employee business expenses. (*See* Def's Ex E at 1.) That amount is composed of $30,192 in vehicle expenses,[2] $5,320 in other expenses, and $6,695 in meals and entertainment (before the 50 percent reduction), less $10,494 in reimbursements from Roy's employer. (*Id.* at 2.) Defendant opened an audit on Plaintiffs' 2013 Schedule A

---

[1] This Final Decision incorporates without change the court's Decision, entered September 4, 2018. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] Neither party provided the second page of Plaintiffs' 2013 Form 2106, so the court did not receive a statement of Plaintiffs' claimed business miles. The standard mileage rate in 2013 was $0.565 per mile, indicating Plaintiffs' mileage deduction was based on 53,437 business miles. Rev Proc 2010-51, sec. 4.01, 2010-51 IRB 883; IRS Notice 2012-72, 2012-50 IRB 673, 2012 WL 5878004.

itemized deductions, issuing a Notice of Deficiency on March 22, 2017, that reduced Plaintiffs' allowable unreimbursed employee business expenses to $2,887.  (*See* Def's Ex A at 2.) Plaintiffs appealed the adjustments to conference, where Defendant's conference officer concluded that Roy's tax home was Medford, evidently based in part on the statements made by Plaintiffs' representative at conference.[3]  (*See id.* at 4.)  The conference officer denied Plaintiffs' appeal for vehicle expenses and meals.  (*Id.* at 5.)

A.    *Roy's Employment in 2013*

Roy testified that he was a field agent for the Laborers' Local 296, which meant he negotiated contracts for new jobs, monitored existing jobs, helped union members, and ensured sufficient votes for union representation.  (S*ee also* Def's Ex B-1.)  For instance, he would find a non-union contractor, build a relationship with them, and solicit them to hire union members. Roy testified that his work required him to drive to potential and existing job sites throughout Oregon.  He also attended "District Council" meetings in various locations around the state.[4]

Roy testified that he was assigned to the Portland metropolitan area for 21 years.  In 2012 or 2013, the Medford field agent was not performing adequately, so the District Council took the Medford agent out of office.  The Portland local assumed control over the Medford local and Roy began traveling to Medford more frequently in 2013.  Roy testified that the District Council always planned to replace the Medford field agent and did so in 2016.

/ / /

/ / /

---

[3] Plaintiffs' representative at conference reportedly "identified [Roy's] base of operation as Medford." (Def's Ex A at 4.)

[4] Roy testified that the District Council is the statewide governing body that oversees the locals, of which there were five before Portland took over supervision of Medford.

B.    *Mileage Log and Tax Home*

Roy kept a mileage log in 2013 and wrote down his daily business mileage. (*See* Def's Ex C.) A typical entry in Roy's mileage log included the date, a total number of miles driven, and either a single location or no location. (*See id.*) Roy testified that the mileages listed for Medford varied because he visited numerous sites in Southern Oregon, including Roseburg, Crater Lake, and the coast. He did not write down each stop, but rather recorded the total mileage for the day based on odometer readings. Roy testified that he did not record mileage traveled from his residence in Molalla to the Portland union hall. He testified that he typically stayed overnight in Medford when he traveled there in 2013. The union paid for his lodging in Medford. Roy testified that his starting place for mileage in Medford was his hotel. He testified that, if no location was written on the log, the starting place was the union hall in Portland. (*E.g.,* Def's Ex C-1 "January 2, 2013".) 112 days were not marked with a location. (Def's Ex F-1).

Roy updated his log in 2018 to include more location details based on his memory. (*See* Ptfs' Ex 1.) His updated mileage log showed travel to Portland and other locations: in January, new locations included Troutdale, Mount Hood Meadows, Salem, Silverton, and others. (*See* Ptfs' Ex 1 at 5, 8, 9.) Roy testified that a full work year included 260 days and he was based in Medford for 128 days in 2013. He testified that he had a single employer in 2013 and it is not possible to distinguish the amount of his pay attributable to Portland or Medford.

Barlow testified that, based on the mileage log, he calculated that Roy spent 129 days in Medford out of a total of 271 days of travel in 2013. (*See* Def's Ex F-1.) Roy spent 47.6 percent of his travel days in Medford and 41.33 percent in unidentified locations. (*See id.*) Barlow testified that — if the unidentified locations were the Portland metropolitan area, as Roy testified — that might change the tax home analysis. He testified that he found numerous discrepancies

with the mileage reported in Roy's log. For instance, Barlow calculated that the trip from Plaintiffs' home in Molalla to Medford was 264 miles, whereas Roy variously claimed 294 and 310 miles.[5] (*See, e.g.,* Ptfs' Ex 1 at 6, 81.) Barlow calculated that the distance from Portland to Florence was 149 miles, whereas Roy claimed 212 miles. (*See id.* at 49.) He testified that Roy's mileage log was inadequate substantiation to allow any mileage deduction for the 2013 tax year.

Roy testified that the discrepancies in mileage were likely due to pulling off the highway to get lunch, use a rest stop, or check on a job. He testified that the IRS audited Plaintiffs in a prior tax year and the agent told Roy that his mileage log was sufficient.

C.    *Other Records*

Barlow provided scanned copies of receipts that Plaintiffs sent to the initial auditor assigned to Plaintiffs' audit. (Def's Ex D.) He testified that the receipts were illegible, so he could not determine dates, locations, prices, or other information contained on the receipts.[6] Roy testified that he provided original receipts to Defendant's initial auditor and he was told by that auditor that Defendant would return the original receipts to Plaintiffs. Barlow testified that Defendant asks for copies, not originals, and does not keep originals when received.

Roy testified that he submitted "gas statements" — credit card statements for gas purchases – to Defendant's initial auditor. Barlow testified that he had not seen them.

## II.  ANALYSIS

The issue presented is whether Plaintiffs are allowed to deduct certain unreimbursed employee business expenses for the 2013 tax year. More specifically, the parties dispute the location of Roy's tax home — the Portland metropolitan area versus the Medford area — and

---

[5] Barlow testified that he used MapQuest to determine distances.

[6] Barlow testified that Plaintiffs claimed a meals deduction based on *per diem* rates, but provided receipts as additional support for Plaintiffs' claimed traveling expenses.

whether Plaintiffs adequately substantiated Roy's traveling expenses under Internal Revenue Code (IRC) section 274(d).

The legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code relating to the measurement of taxable income of individuals, estates and trusts, modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1).[7] Terms have "the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined[.]" ORS 316.012. "Insofar as is practicable in the administration of this chapter, the department shall apply and follow the administrative and judicial interpretations of the federal income tax law. When a provision of the federal income tax law is the subject of conflicting opinions by two or more federal courts, the department shall follow the rule observed by the United States Commissioner of Internal Revenue until the conflict is resolved." ORS 316.032(2).

The legal authority for the disputed mileage deduction begins in IRC section 162(a), which states in relevant part:

> "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
>
> " * * * * *
>
> "(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business[.]"

For a deduction to be allowed as a business expense, it must be both ordinary and necessary to a taxpayer's trade or business. IRC § 162(a)(2). To be " 'necessary[,]' an expense must be

---

[7] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r,* 83 TCM (CCH) 1253, 2002 WL 236685 at *2 (US Tax Ct) (internal citations omitted). The Oregon Tax Court has stated that "* * * an ordinary expense is one which is customary or usual. This does not mean customary or usual within the taxpayer's experience but rather in the experience of a particular trade, industry or community." *Roelli v. Dept. of Rev.*, 10 OTR 256, 258 (1986) (citations omitted).

IRC section 262(a) disallows deductions for "personal, living, or family expenses[.]" The Tax Court has recognized that "[t]he purpose of IRC § 162(a)(2) is to ameliorate the effects of business which requires taxpayers to duplicate personal living expenses," and "[c]onsequently, courts must determine whether the claimed expense is actually required by the business rather than by the taxpayer's personal choice." *Harding v. Dept. of Rev.,* 13 OTR 454, 458 (1996).

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. Plaintiffs must establish their claim "by a preponderance of the evidence[,]" which "means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P.2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made

under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency

* * *."  ORS 305.575.

A.      *Tax Home*

"To deduct travel expenses, taxpayers must show that the expenses (1) were incurred in connection with a trade or business; (2) were incurred while away from home; and (3) were reasonable and necessary."  *Morey v. Dept. of Rev.*, 18 OTR 76, 80-81 (2004)(citation omitted). Generally, a taxpayer's home for purposes of IRC section 162(a)(2) — the "tax home" — is the taxpayer's principal place of business or employment.  *Id.* at 81.[8]  Where a taxpayer's principal place of business is "temporary" as opposed to "indefinite" or "indeterminate," the taxpayer's tax home is her personal residence.  *Id.,* citing *Peurifoy v. Comm'r*, 358 US 59, 60, 79 S Ct 104, 3 L Ed 2d 30 (1958).  However, any employment in excess of one year is *per se* indefinite.  *Id.*, citing IRC § 162(a).

The court in *Morey* identified three "standards" for determining the location of a taxpayer's tax home, but did not ultimately select the applicable standard because the issue was "not squarely placed before [the] court."  18 OTR at 82.  Here, Defendant applied the "three-part objective standard" (the second standard identified in *Morey*), which considers "(1) the length of time [taxpayer] spent in each of the locations; (2) the degree of [taxpayer's] business activity in each location; and (3) the relative proportion of [taxpayer's] income derived from each location."

---

[8] The Supreme Court observed a split on the meaning of "home": "The Tax Court and administrative rulings have consistently defined it as the equivalent of the taxpayer's place of business[,]" whereas some circuit courts "have flatly rejected that view and have confined the term to the taxpayer's actual residence."  *Comm'r. v. Flowers*, 326 US 465, 471-72, 66 S Ct 250, 90 L Ed 203 (1946) (citation omitted); *see also Rosenspan v. US*, 438 F2d 905, 912 (2d Cir 1971) (interpreting "home" to mean "residence").  This court has observed that "[t]here can be little doubt the Commissioner of Internal Revenue observes the rule that, for purposes of section 162(a)(2), 'home' means the taxpayer's principal place of business or employment."  *Harding v. Dept. of Rev.*, 13 OTR 454, 459 (1996), citing Rev Rul 83-82, 1983-1 CB 45.  Revenue Ruling 83-82, 1983-1 Cumulative Bulletin 45 was obsoleted in part by Revenue Ruling 93-86, 1993-40 Internal Revenue Bulletin with respect to the presumption of when a taxpayer's employment is temporary or indefinite, but that is not at issue here.

*Id.* at 84-85; *see also* Def's Ex A at 4 (conference decision). Plaintiffs did not challenge the standard applied by Defendant and the three-part objective standard appears to be followed by the Commissioner of Internal Revenue. *See, e.g., Folkman v. U.S.*, 615 F2d 493, 495 (9th Cir 1980) (finding it "useful to apply the three-part definitional test proposed by the government and adopted by the Sixth Circuit in *Markey v. Comm'r*, 490 F2d 1249 (6th Cir 1974)", where the "taxpayer both earns a substantial income and stays overnight in each of two locations"); *see also Barrett v. Comm'r (Barrett)*, 114 TCM (CCH) 398 (2017), 2017 WL 4407835 at *4 (US Tax Ct) (applying the *Markey* test for the 2011 through 2014 tax years). Accordingly, the court will consider the three-part standard in determining Roy's tax home for the 2013 tax year.

      1.     *Three-part objective standard*

      Several cases are illustrative. In *Folkman*, the taxpayers were pilots who lived in Reno, Nevada as a requirement of their work for the Nevada Air National Guard, but who were based in San Francisco, California as employees of a commercial airline. 615 F2d at 494. Even though the taxpayers spent most of their time in Reno (typically more than 200 days per year), the court determined their tax homes were at their airline duty base in San Francisco because they earned most of their income (approximately 85 percent) from the airline. *Id.* at 494 n3, n4, 496; *see also Tirheimer v. Comm'r*, 63 TCM (CCH) 2307(1992), 1992 WL 42757 (US Tax Ct) (concluding tax home was where taxpayer spent 75 percent of his time and earned 97 percent of his income).

      In *Daly v. Comm'r*, 72 TC 190, 191, 194 (1979), the taxpayer was a district sales a manager with a three-state sales territory, who lived outside of his sales territory at the location of his spouse's job. The court examined the various locations of taxpayer's sales activity, concluding that his tax home was the Philadelphia metropolitan area because 80 percent of his sales activity was within 88 miles of Philadelphia. *Id.* at 195-197. Even though the taxpayer

performed work at his home office, the court quoted taxpayer's testimony that "selling is 85 percent of the job," indicating that taxpayer's most important job functions occurred in the Philadelphia metropolitan area and not at his home office. *Id.* at 196.

In *Barrett*, taxpayer worked in video production, primarily performing services for one organization with a facility in Washington, D.C., 2017 WL 4407835 at *2. Taxpayer was required "to travel to DC to use the editing facilities and the library at [the facility] to perform postproduction activities[,]" but "continued to write scripts and perform preproduction services in his Las Vegas home." *Id.* The court agreed that taxpayer's tax home was Las Vegas rather than Washington, D.C., based on his testimony that he spent 75 percent of his time outside Washington, D.C., "interviewing on location and writing scripts and reviewing footage in Las Vegas." *Id.* at *4.

2.    *Application to this case*

With respect to the first part of the test, time spent in each location, Roy worked 129 days in the Medford area out of a total of 271 days worked.[9] That is 47.6 percent of Roy's work time spent in the Medford area. Roy testified that unidentified locations in his mileage log were the Portland area. With respect to the degree of business activity at each location, Roy performed the same types of work in each location. However, Roy's connection to the Portland area was long-term (21 years), whereas his assignment to the Medford area was temporary while his employer searched for a new Medford field agent.[10] The third factor — income derived from each location — is inconclusive because Roy received the same pay based on work in each location.

---

[9] "A principal place of business may include an entire metropolitan area. Rather than looking at particular jobs, all of the job prospects in the area must be considered." *Hintz v. Dept. of Rev.*, 13 OTR 462, 467 (1996), citing *Ellwein v. United States*, 778 F2d 506, 510 (8th Cir 1985).

[10] Even though Roy's assignment to the Medford area lasted more than one year, his trips to Medford were "sporadic and for short periods lasting less than half a year[,]" so the bright line rule in IRC section 162(a) does not apply. *Barrett*, 2017 WL 4407835 at *3.

Roy spent a significant amount of time working in the Medford area, but it was not a majority of his work time in 2013. Roy also spent a significant amount of time working in the Portland area and other locations around the state. Roy's assignment to the Medford area was a temporary one, whereas his permanent assignment continued to be the Portland area. On those facts, the court is convinced that Roy retained a principal place of business – and, therefore, tax home – in the Portland area rather than the Medford area for the 2013 tax year.

B.     *Substantiation of Plaintiffs' Traveling Expenses*

Traveling expenses and expenses associated with the business use of a passenger vehicle are subject to IRC section 274(d), which requires taxpayers to substantiate

> "by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift."

Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]"  ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488, WL 332038 at *2 (2001) ("[t]axpayers are required to maintain records sufficient to substantiate their claimed deductions").  In addition to testimony, courts may consider evidence "such as appointment books, calendars, or maps * * * to corroborate the bare information contained in the mileage log." *Solomon v. Comm'r*, 101 TCM (CCH) 1424 (2011), 2011 WL 1627966 at *3 (US Tax Ct).

1.     *Mileage*

Roy kept a contemporaneous mileage log when he traveled for work. The log was a daily planner in which Roy noted his total mileage, based on odometer readings, on days that he traveled for business. He did not note every location visited or the business conducted. In

preparation for trial in 2018, Roy updated the 2013 log from memory to include more details, such as the general destinations he traveled to within an area.

Roy's updated log is unreliable because it was based on memory after five years had passed and it was not corroborated by other, more reliable evidence. His original mileage log is not adequate to support his total claimed mileage deduction for the 2013 tax year. However, the court is convinced that Roy's original mileage log provides adequate substantiation of Roy's travel between Portland and Medford, as well as travel to other locations specifically noted in the log. Roy provided credible testimony to support the business purpose of that travel. Indeed, Defendant's tax home determination accepts that Roy frequently traveled to Medford.

The court finds that Roy made the following business trips in 2013, each starting from Portland: 34 to Medford, two to Florence, one to Coos Bay, one to Lincoln City, and one to Bend. (*See* Def's Ex C1-105). The court takes judicial notice of the round-trip distances between those cities: 546 miles to and from Medford; 326 miles to and from Florence; 444 miles to and from Coos Bay; 176 miles to and from Lincoln City; and 326 miles to and from Bend.[11] The court finds Roy drove 20,162 business miles in tax year 2013. Accordingly, Plaintiffs are allowed a mileage deduction of $11,392 based on the 2013 rate of 0.565 per mile.

A taxpayer's costs of traveling between one business location and another generally are deductible under IRC section 162(a). Rev Rul 99-7, 1999-1 CB 361 (1999); *see also Curphey v. Comm'r*, 73 TC 766, 777 (1980) ("local transportation expenses incurred in travel between one business location and another are deductible"). Although Roy testified persuasively that he drove between Medford and other locations for business purposes, his log does not provide adequate substantiation under IRC section 274(d) for any additional mileage deduction.

---

[11] Distances based on www.mapquest.com.

2.    *Meals*

Employees are permitted to use the applicable federal *per diem* rate to substantiate meal expenses.  *See* Rev Proc 2011–47, 2011–42 IRB 520, § 4.03.  Pursuant to IRC section 274(n)(1), only 50 percent of meal expenses are allowed for purposes of the deduction.  Based on Roy's overnight travel to Medford, Florence, Coos Bay, Lincoln City, and Bend, the court finds Plaintiffs' meals and incidental expenses totaled $7,118.50.[12]  After the 50 percent reduction, Plaintiffs are allowed a deduction of $3,559.25 for meals for the 2013 tax year.

### III.  CONCLUSION

Upon careful consideration, the court concludes that Roy's tax home was the Portland metropolitan area in the 2013 tax year.  Plaintiffs are allowed a mileage deduction or $11,392 and a meals deduction of $3,559.25 as unreimbursed employee business expenses.  Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2013 tax year, Plaintiffs are allowed a mileage deduction or $11,392 and a meals deduction of $3,559.25 as unreimbursed employee business expenses.

Dated this ____ day of September 2018.

ALLISON R. BOOMER
MAGISTRATE

**If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR. Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.**

**This document was signed by Magistrate Boomer and entered on September 25, 2018.**

[12] The applicable federal per diem rates were as follows for 2013: Standard Oregon rate $46/day and $34.50 for first and last day of travel; Medford $56/day and $42/day for first and last day of travel; Bend $61/day and $45.75 for first and last day of travel; Florence $51/day and $38.25 for first and last day of travel; and Lincoln City $56/day and $42 for first and last day of travel.  *Available at* https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup/?action=perdiems_report&state=OR&fiscal_year=2013&zip=&city=.